## Ash et al. *versus* Guie to use, etc.

97　493
158　432
158　620

1. The members of a Masonic lodge cannot, without evidence to warrant the inference, be deemed partners in the business of purchasing real estate and erecting buildings so as to bind each of them for amounts borrowed by other members to be appropriated to such purposes.

2. The members of a Masonic lodge, an unincorporated body, appointed a committee to erect a building for the use of the lodge, authorizing them to borrow money for this purpose. The committee accordingly borrowed various sums, giving to the lenders certificates of indebtedness in the name of the lodge, signed by the officers thereof, and sealed with a seal usually employed by the secretary for authenticating communications to other lodges and which had never before been appended to a pecuniary obligation. In a suit brought upon one of said certificates wherein all the members of the lodge were joined as defendants and alleged to be partners: *Held*, that all the members of the lodge were not liable as partners upon the certificate. *Held, further*, that the members of the committee or those members of the lodge who participated in the erection of the building by voting for or advising it, and those members who in any way assented to the undertaking or subsequently ratified it were alone liable for the amount of the certificate. *Held, further*, that the seal attached to the certificate must be deemed as the seal only of the officers signing the same and of those who advised the affixing of it thereto.

3. Where judgment has been obtained against an unincorporated association and a fi. fa. against realty issued thereon which has been returned levied and condemned, but no further proceedings have been taken thereon, and subsequently the individual members of such association are sued for the same claim, a plea of "former recovery" on their part is a nullity.

4. The Act of May 28th 1878, Pamph. L. 153, providing that in all civil proceedings by or against surviving partners, the policy of the law shall not exclude any party to the record from testifying to matters having occurred between the surviving party and the adverse party to the record, is a remedial statute and will be liberally construed so as to include the case of any two who may jointly contract, even though not strictly partners.

5. *Semble*, therefore, that if two persons jointly execute a note, and one die, in an action between the holder and the survivor, the statute will apply as if the makers had been partners.

6. The Act of March 27th 1865, Pamph. L. 38, enabling a party in any civil proceeding to compel the opposite party to testify on his behalf, is not affected by the Act of April 15th 1869, Pamph. L. 30. Where, therefore, the plaintiff in an action upon a contract made with several defendants, some of whom have since died, calls upon others of them to testify on his behalf: *Held*, that the witnesses were competent and that their evidence should have been admitted.

7. A liberal construction of the Act of March 22d 1861, Pamph. L. 186, permits the plaintiff, where one of several defendants has died since the commencement of the action, to bring in the executor or administrator of the deceased defendant and to proceed against him and the survivor at the same time to judgment. But he cannot be compelled to do this, nor can the representatives of the decedent come in and be substituted without the plaintiff's consent, nor can the survivors claim delay until the representatives be substituted.

[Ash *v.* Guie.]

'8. In a suit against several joint debtors, judgment for want of an appearance was improperly entered against some of them and stricken off without leave of court. A like judgment was then granted by the court, and afterwards on motion of plaintiff stricken off by the court before the trial'of the cause. *Held,* that these facts did not constitute error calling for reversal.

March 25th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Chester county:* Of January Term 1880, No. 337.

Assumpsit, by William H. Guie to the use of J. Alfred McCaughey, against Phineas A. Ash, Horace A. Beale, James Mullen, executor of James C. Roberts, deceased, and over one hundred others, "lately trading as Williamson Lodge, No. 309, A. Y. M." The plaintiff filed the following statement :

" The plaintiff's demand in the above case is founded on a claim for money loaned to the defendants, which was received by them, and used by them in the business in which they were then engaged, for which the defendants issued to the plaintiff a certificate of indebtedness, of which the following is a .copy :

"No.            *This is to certify.*            $100
That Williamson Lodge No. 309, A. Y. M., of Downingtown, Chester county, Pennsylvania, acknowledges itself indebted to William H. Guie, in the sum of one hundred dollars, payable in two years from November 11, 1870, with lawful interest for the same, payable annually.

· "In testimony whereof the Worshipful Master and Wardens have hereunto set their hands, and caused the seal of said Lodge to be affixed, at Downingtown, this 11th day of November, A. D. ·1869.

| WILLIAMSON LODGE, No. 309, A. Y. M. SEAL. CONSTITUTED OCT. 19, A. D. 1857. | CHARLES P. KEECH, W. M. |
|---|---|
| | CHARLES E. ELSTON, S. W. |
| | THOS. B. SMITH, J. W. |

"*Attest:* R. D. WELLS, *Secretary.*

" Which certificate was afterwards assigned by the plaintiff to the equitable plaintiff, by an assignment endorsed thereon."

The sheriff returned the writ served as to a large number of the defendants, and nihil habet as to others. Judgment was entered for want of an appearance against a number of the defendants after the return-day, and more than ten days after service, but before the actual return of the writ. After the writ had been returned judgment was also entered for want of an appearance

[Ash *v*. Guie.]

against a number of other defendants. By order of plaintiff's attorney filed, but without application to the court, these judgments by default were "stricken off, as having been improvidently entered, and as being null and void and of no effect." On the same day judgment was taken by default, in open court, against the same defendants. This judgment was, on motion of plaintiff, stricken off before trial.

A number of the defendants filed affidavits of defence and rules to show cause why judgment should not be entered for want of sufficient affidavits were discharged by the court. The defendants then pleaded non assumpsit, non assumpsit infra sex annos, payment, payment with leave, &c. One of the defendants, Charles E. Elston, set up in his affidavit of defence (which was subsequently treated as a plea) a former recovery of judgment by the plaintiff in a suit against "The Williamson Lodge No. 309, A. Y. M.," for the same cause of action. The record of that suit did not show that Elston had been served or that he appeared therein; it showed that a fi. fa. had issued under which real estate of the defendant had been levied upon and condemned, but that no further proceedings had been taken therein.

The defendants suggested of record the death of ten of their number.

When the case was called for trial, before FUTHEY, P. J., the plaintiff asked that the jury be sworn to try the case against the survivors of the defendants. The defendants objected, on the ground that the action being brought against partners, trading as Williamson Lodge, &c., the trial could not proceed without bringing in the representatives of the deceased defendants. Objection overruled; exception. The jury was thereupon sworn as to the survivors.

The evidence showed the following facts: The Williamson Lodge of Ancient York Masons, No. 309, was an unincorporated association for charitable, benevolent and social purposes, the officers of which were a Worshipful Master, Senior Warden, Junior Warden, Treasurer, Secretary and a Board of three Trustees. The trustees had charge of the property of the lodge, took the title to land, collected the income and extra funds of the lodge, &c. The lodge had a seal, which was used for authenticating certificates of membership, communications by the secretary with other lodges, and for similar purposes. About the year 1867 the lodge desired to erect a building for lodge purposes. The master, at a meeting of the lodge on September 13th 1867 (without any prior resolution authorizing him so to do, so far as appeared in evidence), appointed a committee of five, consisting of the three trustees and two other members, to select a lot, procure plans for a new building, &c. The temple or building was erected under the direction of this committee of five. They appointed their

own treasurer, collected funds and issued certificates therefor, of which that in suit is one, signed by the worshipful master, the senior and junior wardens, attested by the secretary and authenticated by the seal of the lodge. The committee was not specially authorized to give said certificates, but it was the custom of the lodge to issue like instruments whenever it borrowed moneys. Prior to the use of the seal on these certificates, it had never been attached to any pecuniary obligation. The committee reported to the lodge from time to time, and its action was approved by the lodge. The building was 65 feet by 50 feet and three stories in height, with a basement. The lodge occupied the rooms on the third floor; the other rooms were rented out for general purposes, as opportunity offered.

The plaintiff, Guie, was called to testify in his own behalf. Objected to, on the ground that some of the original defendants having died, the plaintiff is not a competent witness. Objection overruled. Exception.

The plaintiff also called R. D. Wells, Joseph Doan and J. A. McCaughey, defendants, as on cross-examination. Objected to, "because plaintiff must make out his case by affirmative proof, and not cross-examination; because said persons are interested parties, and some of the defendants have died since the suit was brought." Objection overruled. Exception.

The defendants presented the following points:—

1. The defendants' association was not such a partnership as is chargeable for the acts of any members of the association, and no person who was not present at the time that any of the actions bearing upon this matter were presented to the lodge can be held responsible in this suit.

2. The defendants cannot be held liable as partners for the debt in suit, there being no proof that they held themselves out to the world as partners, and no evidence that they agreed among themselves to be partners.

3. The instrument in suit they allege is under the seal of the defendants. The proof shows that it is not the seal for transacting such business. It is a seal that was never used, and is not authorized by the lodge to be used, for such purpose. It does not bind the parties defendant, therefore there can be no recovery thereon against them.

4. The former recovery pleaded by Charles E. Elston, one of the defendants, is a bar to recovery in this action.

5. Upon the whole evidence the plaintiff is not entitled to recover.

The court charged the jury as follows: "The questions involved in this case are questions of law. The points will be reserved by the court for future consideration. We direct you to render a ver-

[Ash v. Guie.]

dict for the plaintiff for the amount of his claim, and the questions raised during the trial will be more fully considered hereafter."

Verdict accordingly for the plaintiff for $160. The court subsequently entered judgment for the plaintiff on the reserved points. The defendant took this writ of error, assigning for error, inter alia, the striking off of the judgments entered by default, on the order of plaintiff's counsel, without an order of court, or the application or consent of any of the defendants; the swearing of the jury against the survivors of joint contractors, without substituting the representatives of deceased defendants whose deaths had been suggested; the admission of plaintiff, and of some of the defendants, to testify; and the entry of judgment on the reserved points.

*R. E. Monaghan* (with him *P. F. Smith*), for plaintiff in error.—The members of the Williamson Lodge were not chargeable by reason of their membership for the acts of any of their co-members. The defendants were members of a club or benevolent association which had no *business* object. There was no capital stock nor community of goods or of labor or of profit and loss. There was no intention to form a partnership, nor did they hold themselves out to the world as partners. They are not liable except for the acts of their agents, within the scope of their duty or the objects of the association. The building of a temple, two rooms of which were occupied by the lodge and the remainder rented for profit, was not within the ordinary affairs of the lodge; and no member is bound for obligations thereby incurred who did not authorize or participate in the borrowing of money. No agency is implied from the mere fact of association: Story on Part. 144, and note; Eichbaum v. Irons, 6 W. & S. 68; 1 Lindley on Part. 55–56; Flemyng v. Hector, 2 M. & W. 172; Todd v. Emly, 7 Id. 432; Livingston v. Lynch, 4 Johns. Ch. 594. The signing of the certificate by the officers was outside the scope of their duty, and *ultra vires*. The common seal of the lodge to the certificates, unlike a corporate seal, could bind no members who did not individually adopt it as their own.

Guie, Wells and Doan, parties to the suit, were not competent witnesses to charge the estates of deceased defendants: Act of April 15th 1869, Pamph. L. 30; Karns v. Tanner, 16 P. F. Smith 297; Hanna v. Wray, 27 Id. 27; Standbridge v. Catanach, 2 Norris 368; Brady v. Reed, 6 Id. 111. The Act of May 25th 1878, Pamph. L. 153, does not remove their incompetency. It is limited to suits against surviving partners.

But if the defendants were partners, the court erred in allowing the case to be tried against the surviving defendants only: Act of March 22d 1861; Dingman v. Amsink, 27 P. F. Smith 114; Brady v. Reed, *supra*. The suit is against partners under an alleged sealed instrument. But partners have no authority to bind

1 OUTERBRIDGE—32

[Ash *v.* Guie.]

the partnership with a seal, unless expressly authorized : Story on Part. 117 ; Gerard *v.* Basse et al., 1 Dall. 121 ; Overton *v.* Tozer, 7 Watts 331 ; Snyder *v.* May & Klose, 7 Harris 235; Bewley *v.* Tams, 5 Harris 485; Johns *v.* Battin, 6 Casey 84 ; Hoskinson *v.* Eliot et al., 12 P. F. Smith 393.

*R. Jones Monaghan,* for the defendant in error.—The jury was properly sworn against the survivors. The common-law rule, that an action against joint contractors would, on the death of one defendant, abate, was changed by the statute, 8 & 9 W. 4, c. 3, which is in force in Pennsylvania : Roberts Dig. *142 ; Walter *v.* Ginrich, 2 Watts 204; McCabe *v.* United States, 4 Id. 325 ; Given *v.* Albert, 5 W. & S. 339 ; Insurance Co. *v.* Spang, 5 Barr 113 ; Miller *v.* Reed, 3 Casey 248. This statute was not repealed by the Act of March 22d 1861, Pamph. L. 186, Purd. Dig. 39, pl. 12 ; Machette *v.* Magee, 9 Phila. 24 ; Hollenbach *v.* Moore, 1 W. N. C. 192; Hoskinson *v.* Elliott, 12 P. F. Smith 393 ; Neal's Ex'rs *v.* Gilmore, 29 Id. 426.

The witnesses Wells, Doan, Guie and McCaughey were competent. The jury were sworn to try the issue between living parties only ; both sides were on an equality and both could testify. The case falls within the Act of 1869, and is not within any of the exceptions. The judgment recovered against the survivors does not bind the estate of any dead member. Moreover, the Act of May 25th 1878, Pamph. L. 153, is applicable, as the witnesses were only called to testify as to matters which occurred " between the surviving partners and the adverse party."

The defendants were jointly liable as partners. The members were jointly interested in the capital stock and property, and in the profit and loss thereon. Lodges of Free Masons have been treated as partnerships in England : Lloyd *v.* Loaring, 6 Ves. 773 ; Beaumont *v.* Meredith, 3 Ves. & B. 180.

The plea of former recovery cannot avail the defendants, because the former suit was not between the same parties, but was against " The Williamson Lodge " only by its title. The record does not show a judgment against any of these defendants.

The defendants, by their acts or silence, ratified the use of the seal on the certificate, and were bound thereby, but if this were otherwise, our judgment may be supported under the common counts in debt contained in the *narr.*

Mr. Justice TRUNKEY delivered the opinion of the court, May 2d 1881.

One of the defendants, called by plaintiffs, testified : " The full title of our lodge is Williamson Lodge, No. 309, F. and A. M. ; F. and A. M. means Free and Accepted Masons ; the purposes of our lodge are charitable, benevolent and social." This is the evidence

[Ash *v.* Guie.]

as to the objects for which the association was formed, and without proof of its constitution or rules respecting admission of members and the management of its affairs it was held to be a common partnership. A partnership has been defined to be a " combination by two or more persons of capital, or labor, or skill, for the purpose of business for their common benefit." It may be formed, not only for every kind of commercial business, but for manufacturing, hunting, and the like, as well as for carrying on the business of professional men, mechanics, laborers, and almost all other employ- ments. It would seem that there must be a community of interest for business purposes. Hence, voluntary associations or clubs, for social and charitable purposes, and the like, are not proper part- nerships, nor have their members the powers and responsibilities of partners : Parsons on Part., 6, 36, 42.

A benevolent and social society has rarely, if ever, been con- sidered a partnership. In Lloyd *v.* Loaring, 6 Vesey 773, the point was not made, but Lord ELDON thought the bill would lie on the ground of joint ownership of the personal property in the members of a Masonic lodge ; there was no intimation that they were partners. Where a society of Odd Fellows, an association of persons for purposes of mutual benevolence, erected a building, which was afterwards sold at sheriff's sale in satisfaction of me- chanics' liens, in distribution of the proceeds, it was said that, as respects third persons, the members were partners, and that lien- creditors, who were not members, were entitled to preference as against the liens of members : Babb *v.* Reed, 5 Rawle 151. Had the members been called joint-tenants of the real estate, the same principle in the distribution would have applied. In Flemyng *v.* Hector, 2 M. & W. 172, Lord ABINGER stated the difference between a body of gentlemen forming a club and meeting together for one common object, and a partnership where persons engage in a com- munity of profit and loss, and each partner has the right of property for the whole, and in any ordinary transactions may bind the part- nership by a credit. He held that a club and its committee must stand on the ground of principal and agent, and that the authority of the committee depends on the constitution of the club, which is to be found in its own rules. After noting the rules of the club, in the case before him, he says : " It therefore appears that the members in general intended to provide a fund for the committee to call upon. I cannot infer that they intended the committee to deal upon credit, and unless you infer that that was the intention, how are the defendants bound ?" A mutual beneficial society partakes more of the character of a club than of a trading associa- tion. Every partner is agent for the partnership, and as concerns himself he is a principal, and he may bind the others by contract, though it be against an agreement between himself and his part- ners. A joint tenant has not the same power, by virtue of the

[Ash *v.* Guie.]

relation, to bind his co-tenant. Thus, one of several co-adventurers in a mine, has not, as such, any authority to pledge the credit of the general body for money borrowed for the purposes of the concern. And the fact of his having the general management of the mine makes no difference, in the absence of evidence from which an implied authority for that purpose can be inferred: Ricketts *v.* Bennett, 4 M., G. & S. 686, (56 Eng. C. L.).

Here there is no evidence to warrant an inference that when a person joined the lodge he bound himself as a partner in the business of purchasing real estate and erecting buildings, or as a partner, so that other members could borrow money on his credit. The proof fails to show that the officers or a committee, or any number of the members, had a right to contract debts for the building of a temple, which would be valid against every member from the mere fact that he was a member of the lodge. But those who engaged in the enterprise are liable for the debts they contracted, and all are included in such liability who assented to the undertaking, or subsequently ratified it. Those who participated in the erection of the building, by voting for and advising it, are bound the same as the committee who had it in charge. And so with reference to borrowing money. A member who subsequently approved the erection or borrowing could be held on the ground of ratification of the agent's acts. We are of opinion that it was error to rule that all the members were liable as partners in their relation to third persons in the same manner as individuals associated for the purpose of carrying on a trade.

This unincorporated association had a seal which the officers were authorized to use for certain purposes. Some of those who engaged in the business of borrowing money directed it to be affixed to the certificate of indebtedness. All who did, adopted it as their seal for the specific purpose. It was not the seal of a corporation, nor intended as such. The parties borrowed the money in the name of the lodge, and gave the certificate in same name, and adopted a common seal. They cannot repudiate it in good faith to the lender. He loaned the money on a sealed instrument, in many respects better than a simple contract. Those who advised affixing the seal should be held the same as their officers, who signed the certificate. Were the members partners, without evidence of agreement between them that the seal should be affixed to contracts, those not assenting to its use in that way would not be bound by a sealed instrument, though given for a debt for which all were liable. Schmertz *v.* Shreeve, 12 P. F. Smith 457. The learned judge was right in ruling that the certificate was a sealed instrument, but not, under the evidence, in holding that it was authorized by all the members.

Elston pleaded a former recovery in an action against "The Williamson Lodge, No. 309, A. Y. M." The court properly re-

[Ash *v.* Guie.]

marked that if judgment had been recovered in that suit against any of these defendants, it would not have precluded recovery in a subsequent action against those not joined. That was not a recovery against any person, natural or artificial. The writ was not served upon Elston, nor did he appear. It is not to the purpose to speak of the result, had property, held in the name of the lodge, been sold in satisfaction of the judgment. The plaintiff has received nothing, and Elston was not a party in that proceeding.

The Act of May 25th 1878, Pamph. L. 153, provides that in all civil proceedings by or against surviving partners, no interest or policy of law shall exclude any party to the record from testifying to matters having occurred between the surviving party and the adverse party on the record. This statute is remedial, enacted to enable parties to testify who stand on an equality, though a party in interest be dead. Its spirit embraces the survivor of two or more who jointly contracted. If two persons jointly execute a note, and one die, in an action between the holder and the survivor, this statute should apply as if the makers had been partners. Otherwise, the mischief is only partially remedied. Those jointly concerned in a transaction are partners in the popular sense of the word, and, considering the obvious intendment of the statute, it should apply in case of a surviving partner, in the popular as well as the technical sense. Therefore, Guie was a competent witness to prove what occurred between himself and the defendants.

It was clearly competent for the plaintiff to call Wells and Doan. Any party, in any civil action, may compel any adverse party to testify in his behalf, in the same manner and subject to the same rules, as other witnesses (Act March 27th 1865, Pamph. L. 38). This statute is not affected by the Act of 1869. Wells and Doan were not called to prove the liability of any deceased member of the lodge, and no objection was made on that ground. It is immaterial to the plaintiff in this trial whether the deceased members were liable. He has a right to prove everything, if he can, by the adverse party, which will establish his case. The adverse party is called against his interest, and the statute places him in a different position from a party proposing to testify in his own behalf.

The Act of March 22d 1861, Pamph. L. 186, provides that in no case on any joint obligation, shall a plea be entertained, on the part of any heir or personal representative, that one of the joint debtors has deceased since the commencement of the action, but the same shall be proceeded in against the estate of said decedent, as though the suit had been commenced against the decedent alone. Literally and strictly, upon the death of a party to the record, jointly sued with others, the further progress of the action against his estate is the same as if he had been sued separately. A liberal construction of the statute permits the plaintiff to bring in the executor or administrator, and proceed against him and the sur-

[Ash *v.* Guie.]

vivor at the same time to judgment: Dingman *v.* Amsink, 27 P. F. Smith 114. But it does not follow that he is compelled to do this, or that the representatives of the decedent may come in and be substituted, and have trial with the survivor, against the plaintiff's consent; much less can the survivors claim delay till the representatives be substituted. There was no error in directing the jurors to be sworn as to the survivors.

Judgment was erroneously entered by the plaintiff against part of the defendants in default of appearance, which was afterwards struck off without leave of court. The defendants made no motion to have it reinstated; they appear to have acquiesced in the striking off. Subsequently, upon motion, the court granted judgment against the same defendants, and this also was struck off by the court, before trial. We are not convinced of any such error in these interlocutory judgments, and their vacation, as calls for reversal.

Without noticing seriatim the two dozen assignments of error, we have endeavored to express our opinion on every material point raised by them. This writ is by all the defendants, and they contend that none are liable. That the money was fairly loaned by the plaintiff and used by the borrowers, is not disputed. If any of the defendants had no part in the borrowing, either by previous assent and procurement, or by subsequent ratification, they have a meritorious defence, and the grounds on which the judgment is reversed will avail them. The question is one of fact, and must be determined by the jury from the evidence. It is difficult to conceive of a meritorious defence in those who actually got the money, some of whom signed the certificate, and others actively participated in the giving of it. They have a legal right to refuse payment until judgment be recovered according to law. But they cannot complain if the plaintiff fails to include every one in the action who is liable, or fails to discover proof against every one included. In the nature of the case, it is difficult for the plaintiff to determine in advance the precise individuals who are liable, though he be sure of some of them, and the court below has not been, and will not likely be, slow to allow necessary amendments, authorized by the statutes.

Judgment reversed, and *venire facias de novo* awarded.