Opinion by
Henderson, J.,
The plaintiff’s evidence, if credited by the jury, would show the following facts: For some time prior to June 15, 1903, an unincorporated association, -known as the Commercial Co-operative Association, existed in Philadelphia, whose object was the accumulation of a fund to be loaned to members of the organization. On June 15, 1903, Martin Kohn, a member of the association, borrowed therefrom $750 and gave his promissory note for the same, payable on demand, on which note Weisen Brothers were indorsers. A payment of $200 was subsequently made thereon by the maker. At a later date in the same year the association learned that the indorsers had become insolvent and thereupon, by resolution of the board of directors at a meeting at which all were present, the secretary was given full power to collect the note or to secure a new note with another indorser. The secretary then called on the maker of the note and demanded payment or a new note with a new indorser. The defendant was at the maker’s place of business and stated to the secretary that he was a creditor of Kohn’s to the amount of about $3,000; that he had purchased the stock of goods, or was about to do so, and was taking an account of stock. The plaintiff’s secretary stated to him and Kohn that he must have the money due the plaintiff and that if it was not paid that day he would see a lawyer and issue an attachment; whereupon the defendant said to him that if he did that “none of us will get any *266 money. I will take the shop with stock and with everything in my name, and I will pay you the money.” He asked the secretary to be quiet and not issue an attachment against the property, nor make any disturbance, and in a day or two he would bring him the money. The defendant was then engaged in putting the business in order so that he might take it over on his own account and said in the same conversation that as soon as that was done the plaintiff would get a check. The secretary reported this state of facts to the association, including the promise of the defendant, on November 9, 1903. In consideration of this report it was determined that everything should remain quiet until the defendant paid the money. On November 10, in the same year, one of the directors of the association saw the defendant and called his attention to- his promise to pay the Kohn liability and the defendant told him that he would pay the debt in about two days; that the matter would take about two days more. The defendant having refused to pay the association the claim was placed in the hands of an attorney and the officers were directed to proceed with the collection of the claim. No further proceedings were had against Kohn looking to the collection of his note. Four reasons were presented by the defendant in support of the motion for nonsuit: first, that the alleged agreement was by Rand Brothers and not by the defendant; second, that there was no evidence of an acceptance by the association of the offer of the defendant to pay if the plaintiff would forbear to bring suit against Kohn; third, that there was no evidence of authority on the part of the plaintiff to bring the suit; fourth, that the promise was a verbal one to answer for the debt of another and not enforceable under the statute of frauds. The learned judge of the court below sustained the motion for the third reason, but they are all urged by the appellee in support of the judgment.
That the promise upon 'which the plaintiffs rely was made 'by the defendant rather than by Rand Brothers is shown by very direct and positive evidence. It appears from the testimony that one of the witnesses identified him in court as the Mr. Rand who made the promise and another named him as *267 the person who had made the promise to him. It is true that the minutes of the association make reference to the claim against Rand Brothers: This is probably because of business relations sustained by the defendant, but all of the evidence of the contract relied upon by the plaintiff relates to Isador Rand and not to Rand Brothers.
There was some evidence of acceptance by the association of the promise of Rand to pay the debt. The minutes of November 9, 1903, as we interpret them, show an acquiescence by the plaintiff in the proposition of the defendant that he would pay their debt if they did not interfere with his arrangement to take over Kohn’s stock in satisfaction of his own claim and theirs. The minutes were written in the Yiddish dialect and the translation does not present a grammatical construction in accordance with English models, but the meaning is reasonably clear. It should be further observed that no efforts appear to have been made to collect the debt from Kohn.
The association was composed - of about 160 members. The action was brought in its name by the president, secretary and three other members, one of whom at least was a director. It is a well-established rule that in the case of unincorporated associations, having a large membership, actions may be brought by some of the members in their own names in behalf of all. This modification of the usual requirement as to necessary parties is an equitable exception suggested by convenience. Where the number of members is very large it would be, if not impracticable, very inconvenient and certainly unnecessary to include all their names as parties when the right of action exists in the association and when individuals are named who may be made liable for costs. Where the action is brought for all the parties in interest the requirement of the law is met by the use of some of the individuals composing the organization: Story, Eq. Pl., sec. 107; Phipps v. Jones, 20 Pa. 260; Liederkranz Singing Society v. Germania Turn-Verein, 163 Pa. 265; Fletcher v. Gawanese Tribe, 9 Pa. Superior Ct. 393. The right of the association to sue is not questioned. The benefit of the action, if any, accrues to the association and the presumption is that the interests of all are subserved by the proceeding. A *268 judgment in favor of the association would protect the defendant and he has no interest in the disposition of what he may pay thereon. The officers of the association were the actors in bringing the suit and were in the discharge of their official duties in so doing if the cause of action exists as claimed. The minutes of April 4, 1904, contain a provision that the members appointed to conduct the suit on behalf of the association should give security, but this is a matter with which the defendant has no concern. None of the members of the association is objecting; it does not appear that security was not given and, in the absence of objection by those interested, we should assume that that requirement has been complied with.
It is not to the point that some of the members of the association retired therefrom after the alleged liability of the defendant arose and formed a new organization which they caused to be incorporated and which was afterward dissolved. The right of action here asserted remained in the Commercial Cooperative Association to which the obligation of Kohn was given and to whose representatives the promise of the defendant is alleged to have been made. This case is not a contest between warring members of an association, but between the association represented by the only persons who appear to have any right to represent it and a stranger who is alleged to be a debtor. All who are entitled to participate in the assets of the association can be heard when there is a fund for distribution.
The case of Orbin v. Stevens, 13 Pa. Superior Ct. 591, is not an authority in support of the appellee’s position. That was a case where 90 of the 500 and more survivors of the Eighty-fifth Pennsylvania Volunteers formed an association and asserted their right to the custody of the regimental flag which had for years before that been in the keeping of the defendant. It is a proposition too obvious to evoke debate that the flag was no more the property of one or all of the members of the association than of the person in whose custody it was or of the other 400 members of the regiment who were not members of the association. If the flag had belonged to *269 the association and had come into the possession of the defendant the right of the organization to recover it would be clear, whether its membership was large or small.
We are unable to agree with the contention of the appellee that the agreement as set forth by the plaintiff is not enforceable. The evidence tends to show that the defendant was largely interested as a creditor of Kohn; that he either had taken or was about to take the latter’s stock in satisfaction of his debt. It was a matter of prime importance to him, therefore, that he be not disturbed by an attachment issued by another creditor. He had a direct personal interest in securing forbearance by the plaintiffs. If he made the promise alleged his primary object was not to pay Kohn’s debt to the plaintiff, but the more easily to get Kohn’s property in satisfaction of his own debt. The defendant apparently had control of Kohn’s goods at the time the plaintiff’s officers were at, the latter’s place of business trying to secure the collection of the note and the jury might well conclude that the promise set up was one to save "himself and not to aid Kohn. The statute of frauds does not apply where the promisor has a present pecuniary and personal interest in a transaction in which a third party is the original obligor. This principle is well expressed in Emerson v. Slater, 63 U. S. 28: “Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.” In Fehlinger v. Wood, 134 Pa. 517, the law is thus stated: “Where the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.” A promise to pay on forbearance to issue an execution was considered in Russell v. Babcock, 14 Maine, 138, in which it was held that “ actual damage or a suspension or forbearance of right, or possibility of loss occasioned to *270 one to whom the promise is made, constitute a sufficient consideration to give validity to the promise.” The late case of Pizzi v. Nardello, 209 Pa. 1, is in line with the authorities referred to, as is also Burr v. Mazer, 2 Pa. Superior Ct. 436, in which a clear and convincing opinion is given by President Judge Rice. There was slight evidence in that case of individual advantage to the promisor, but it was held to be sufficient to support a verdict. The plaintiff’s evidence brings the case within the doctrine of the foregoing and other authorities and the facts if found would exempt the contract from the operation of the statute of frauds. We are of the opinion that the plaintiffs established a prima facie case on which they were entitled to go to the jury and that the court was in error in refusing to take off the nonsuit.
The judgment is therefore reversed, and a procedendo awarded.