## Barford, Insurance Commissioner, v. Beaner Electric Co.

*Martin, Swaney & Ewing*, for plaintiffs.

*Joseph Knox Stone*, for defendants.

McCONNEL, J., Dec. 17, 1927.—An action in *assumpsit* has been brought by Einar Barford, Insurance Commissioner of the Commonwealth of Pennsylvania, as statutory liquidator of the William Penn Motor Indemnity Exchange, dissolved, against Beaner Electric Company, claiming to recover from the defendant, which is a corporation, the sum of $33, with interest from Sept. 17, 1921; and the statement sets forth, among other things, that the Insurance Commissioner above named is the statutory liquidator of the William Penn Motor Indemnity Exchange, dissolved; that the said exchange was a reciprocal automobile insurance company, organized and existing under the Act of June 27, 1913, P. L. 634, with its principal place of business in the City of Pittsburgh, County of Allegheny and State of Pennsylvania, and, as such, had appointed William Penn Underwriters, Inc., its attorney-in-fact, as required by said act; that after proceedings in the Court of Common Pleas of Dauphin County, on Nov. 17, 1925, the said exchange was found to be insolvent and the Insurance Commissioner of the Commonwealth of Pennsylvania was directed to make liquidation of said exchange; that the defendant was a member of said William Penn Motor Indemnity Exchange and had appointed William Penn Underwriters, Inc., its attorney-in-fact, as appears by copies of the agreement signed by the defendant attached to the statement of claim and marked Exhibits "B" and "C;" that on Jan. 31, 1920, the defendant had applied for and received a policy of insurance on a Ford automobile, and a copy of said policy is attached to the statement of claim and marked Exhibit "D," the number of the policy being 2163, issued by the William Penn Motor Indemnity Exchange; and on the same day the defendant applied to the plaintiff, William Penn Motor Indemnity Exchange, for insurance on another automobile, and a policy was issued to it, a copy of it being attached to the statement of claim and marked Exhibit "E," the number of this policy being 2164; that the defendant continued to hold said policies until Jan. 31, 1922; that the losses and expenses of said William Penn Motor Indemnity Exchange during the time defendant's policies were in force necessitated the levying of an assessment upon the defendant as a policy-holder, which assessment was duly made on Sept. 17, 1921, by the board of directors of the William Penn Underwriters, Inc., under the power of attorney above mentioned and in accordance with the rule that the policy-holder should pay his proportionate share of the expenses and losses which happened during the period of his policy holding, limited, however, to an amount equal to his annual deposit, and no more; that under policy No. 2163, the defendant

became indebted, by virtue of said assessment, to the William Penn Motor Indemnity Exchange in the sum of $19, and under policy No. 2164, in the sum of $14, making in all $33; that the defendant had received due and legal notice of all of said assessments and demand had been made upon it for payment of the same, but, notwithstanding said notice and demand, the defendant had failed to pay the said sum of $33, or any part thereof.

The defendant filed a statutory demurrer to the statement of claim, setting forth (1) that there is no jurisdiction in the Court of Common Pleas to try the matters set out in the plaintiff's statement of claim; (2) that the plaintiff's statement does not set out any matter on which an action of assumpsit would lie; and (3) that the William Penn Motor Indemnity Exchange, being, as set out in the statement, neither an individual, a partnership nor a corporation, cannot maintain such action, nor can any one else in its behalf who seeks to claim under it. Under this demurrer all the allegations contained in the plaintiff's statement of claim which are properly pleaded must be taken as true.

It seems clear that while the defendant was the holder of these two policies issued by the William Penn Motor Indemnity Exchange, he became liable to pay the assessments on these policies amounting to $33. Two actions in which this exchange was interested and in which policies had been issued were brought in the lower courts of this State, and by appeal were taken to the Superior Court. These two cases are William Penn Motor Indemnity Exchange v. Haddad, 86 Pa. Superior Ct. 307, and William Penn Motor Indemnity Exchange v. Tannous, 86 Pa. Superior Ct. 312. In the first case, which was brought originally in the Court of Common Pleas of Washington County, an action of assumpsit was instituted by William Penn Motor Indemnity Exchange, by William Penn Underwriters, Inc., attorney-in-fact, against Samuel G. Haddad; and in the other case the suit was instituted by the William Penn Motor Indemnity Exchange without the intervention of the attorney-in-fact. The opinions in these two cases were written by Linn, J., and in that in the Haddad case the court said (page 308): "The Insurance Department Act of 1921, P. L. 789, provides a comprehensive method for the solution of the problems which have arisen in the organization and operation of the exchange involved in this appeal, and while that statute does not seem to have been called to the attention of the court below and was not referred to in the briefs filed or argument made in this court, mere reference to it would ordinarily be sufficient to dispose of this appeal."

It was, therefore, held in these two appeals that neither the William Penn Motor Indemnity Exchange, by its attorney-in-fact, nor the William Penn Motor Indemnity Exchange, in its own name, could, since the appointment of the Insurance Commissioner as receiver, maintain actions against the subscribers to insurance with the exchange, but that the matters at issue between the subscribers for insurance and the exchange would have to be worked out through the receiver. Therefore, the Insurance Commissioner brought this action in assumpsit against another subscriber for insurance with the William Penn Motor Indemnity Exchange, and the defendant contends that the Insurance Commissioner cannot maintain this action for the reasons set out in the statutory demurrer.

The defendant cannot and does not contend that the Insurance Commissioner does not represent the William Penn Motor Indemnity Exchange, for under the Insurance Department Act of May 17, 1921, § 503, P. L. 789, provision is made for the application by the Attorney-General to the Court of Common Pleas of Dauphin County for an order upon any insurance company

to show cause why its business should not be closed, and, "in case it shall finally appear to said court or judge that the company aforesaid cannot collect from its members sufficient funds to satisfy the claims against it, the said company shall be adjudged insolvent, and the court or judge aforesaid shall decree its dissolution and appoint the Insurance Commissioner as receiver to take charge of its effects, with like powers as hereinafter provided." And in section 506 of the same act it is provided: "If on a like application and order to show cause, and after a full hearing, the court shall order the liquidation of the business of such company, association, exchange, society or order, such liquidation shall be made by and under the direction of the Insurance Commissioner, who shall be vested by operation of law with title to all of the property, contracts and rights of action of such company, association, exchange, society or order as of the date of the order so directing him to liquidate." Under section 101 of the same act, it is provided as follows: "The word 'exchange,' as used in this act, shall be construed to include only individuals, partnerships and corporations authorized by the laws of the Commonwealth to exchange with each other inter-insurance or reciprocal insurance contracts;" so that clearly this act provides for the liquidation of the affairs of exchanges such as the William Penn Motor Indemnity Exchange.

But the defendant contends that the William Penn Motor Indemnity Exchange, being neither an individual, a partnership or a corporation, could not have originally, if the Insurance Commissioner had not been appointed receiver, bring any action in *assumpsit* against the defendant under the policies of insurance issued to it; and, therefore, as the rights of action only of the exchange passed to the Insurance Commissioner, that the Insurance Commissioner himself cannot bring this action; and the only way an action could have been brought by the William Penn Motor Indemnity Exchange against the defendnat was by a bill in equity, and not by an action of *assumpsit*.

There are two important and controlling questions in this case. The first question is, what kind of an association was formed by the William Penn Motor Indemnity Exchange under the Act of Assembly of June 27, 1913, P. L. 634, which contains exactly the same provisions, as to reciprocal insurance, as the Act of May 17, 1921, P. L. 682. It is clear that the exchanges authorized to be formed under these acts are not corporations, neither are they individuals, nor are they partnerships; but in our opinion they are quasi-corporations, exactly as an unincorporated church association is neither a partnership nor a corporation, but a quasi-corporation.

It will be noticed under article x of the Act of May 17, 1921, P. L. 682, such associations as the William Penn Motor Indemnity Exchange are called "reciprocal and inter-insurance exchanges." And section 1004 of the same act provides as follows:

"Section 1004. . . . Such subscribers so contracting among themselves shall, through their attorney, file with the Insurance Commissioner of this Commonwealth a declaration, verified by the oath of such attorney, setting forth:

"(a) The name or title of the office at which such subscribers propose to exchange such indemnity contracts. Such name or title shall not be so similar to any other name or title previously adopted by a similar exchange or association or by any insurance company as, in the opinion of the Insurance Commissioner, is calculated to result in confusion or deception."

This act also provides for the appointment of an attorney-in-fact and for the transaction of most of the business of the exchange through an attorney-in-fact.

Under section 208 of the Insurance Department Act of May 17, 1921, P. L. 789, it is provided that the Insurance Commissioner shall issue certificates of authority to insurance companies, associations or exchanges of other states and foreign governments, provided he shall be satisfied, by such evidence as he may require and demand, that such company, association or exchange is qualified under the laws of this Commonwealth to transact business herein. It seems evident to us that the exchanges contemplated and authorized by this act created the individuals and corporations who subscribe for the insurance into a quasi-corporation, or at least gave the individuals a local habitation and a name as an exchange and that they are something different from an ordinary unincorporated association.

The second important question is whether such an exchange, whether it be considered as an unincorporated association or as a quasi-corporation, could bring an action of *assumpsit* in its own name. Of course, an unincorporated association cannot be sued under the name of the association in a common-law action, and the suit against such an association has to be against the individuals, naming them all or naming a few of them as representing all of the members of the association. (See Wolfe *v.* Limestone Council, 233 Pa. 357; Maisch *v.* Order of Americus, 223 Pa. 199; Oster *v.* Brotherhood of Locomotive F. & E., 271 Pa. 419; Fletcher *v.* Gawanese Tribe, 9 Pa. Superior Ct. 393.) And the reason that the association cannot be sued in its own name alone arises from the fact that a judgment against such a nonentity would be valuless; and even if a suit could be maintained and a judgment obtained, it would be impossible to execute the judgment. A suit in equity avoids all this trouble and gives the court, in case of a judgment, the power to compel the officers of the association to apply the funds in their hands to the liquidation of the plaintiff's claim.

The same difficulties, however, do not arise in the case of a suit by an unincorporated association, and, therefore, it has been held under numerous decisions in this State that a suit may be brought not only in equity, but at common law by an unincorporated association either *eo nomine* or by certain of its members in behalf of all, provided the action is brought actually for the benefit of all the members of the association; and it makes no difference whether it is merely an unincorporated association or a quasi-corporation, such as a religious association or church.

In the case of Chambers *v.* Calhoun, 18 Pa. 13, an action in *assumpsit* was brought in the name of David Calhoun and James Leech, surviving Robert Curry and Samuel Hamilton, members of the building committee of the Mifflin Township meeting-house, against William Chambers. The Mifflin Township meeting-house was an unincorporated association; William Chambers had subscribed a certain sum for the purpose of building a new house of worship. It was contended by the defendant that the plaintiffs had no right to sue. The opinion of the court was delivered by Chief Justice Gibson, and, among other things, he said: "The promise on which this action is brought, being to no particular person or set of persons by name, could be enforced in England only by a bill in equity; but as our equity powers have not yet been extended to such a case, we are compelled to resort to an action as a substitute for a bill. Why should we higgle about technical congruity after the very first step has been a departure from all congruity? The object is to compel the promissor to pay, and any means that can produce that effect may be resorted to in order to prevent a failure of justice."

In the case of Phipps *v.* Jones, 20 Pa. 260, a suit was brought before a justice of the peace by B. W. Jones and two others, trustees of the Doe Run

Valley Church, against Phipps and Harvey, administrators of Ellis Phipps, deceased. A judgment was recovered before the justice of the peace, the case was appealed to court and the plaintiffs declared in *assumpsit*. A subscription had been made by Ellis Phipps to aid in the building of a church to be under the control of the Presbyterian denomination of Christians. A judgment was recovered against the defendant and it was taken to the Supreme Court. The opinion of that court was delivered by Lowrie, J., who said, *inter alia*: "There ought to be no doubt about the right of unincorporated religious societies to sue on a contract made with them in their associate capacity and for the legitimate purposes of their association, even though there be no persons named or described in the contract as trustees or committeemen on behalf of the society. Such associations have always, and especially since the Act of 1731, been recognized as having an associate and quasi-corporate existence in law, with power to hold land and build appropriate houses, and, of course, with power to acquire rights by contract and to vindicate them. And if the English common law forms are insufficient for such cases, we admit the infusion into our law of the plain equity principle that allows a committee of voluntary societies to sue and be sued as representatives of the whole: 1 Bro. C. C. 101; 13 Ves. 544; Story's Eq. Pl., § 116. There is, therefore, no difficulty about sustaining this action if it has a contract to rest upon."

The case of Singing Society *v.* Turn-Verein, 163 Pa. 265, was an action of replevin brought by the Liederkranz Society, composed of about twelve or fourteen active members and about two hundred passive members. It was an unincorporated association. The action was against the Germania Turn-Verein of Lancaster, Victor Roth, Philip Stumpf and August Koehler. Upon motion in the court below, a non-suit was entered because the plaintiff was not a legal plaintiff and had shown no right to sue. The plaintiffs then appealed to the Supreme Court, and the opinion was delivered by Mr. Justice Mitchell, who said, *inter alia*:

"It is conceded that in cases of unincorporated associations whose membership is large suits may be brought by some of the members in their own names on behalf of or as representing all. The present action, therefore, would have been sustainable if brought in the name of Ostermayer and others in behalf of the members constituting the Liederkranz Society. It was brought in the name of the Liederkranz Society by Ostermayer et al. There is no substantial difference. The allowance of suits in any such form is a modification of the ordinary requirements as to parties, introduced by equity in the interest of practical convenience. 'The second class is where the parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole. In cases of this sort the persons interested are commonly numerous, and any attempt to unite them all in the suit would be, even if practicable, exceedingly inconvenient:' Story, Equity Pleadings, § 107. It is necessary that the suit should be brought on behalf of all the parties in interest, but this may as well be done in substance by using the general name which describes them all, as by the phrase 'in behalf of themselves and all others interested.' The latter is the usual form, and it is always better to adhere to established practice. . . .

"Unincorporated societies have long held in this State an intermediate position between corporations and partnerships. Those for religious purposes, it is said by Lowrie, J., in Phipps *v.* Jones, 20 Pa. 260, 'have always, and especially since the Act of 1731, been recognized as having an associate and quasi-corporate existence in law.' Their ownership of property is of the

same intermediate character. It partakes of the qualities of both the others, the title being for many purposes joint and several like that of partners or joint-tenants, while the right of possession is joint only as in corporations."

It will be noticed that the action in this case was brought by the Liederkranz Singing Society of Lancaster, Pa., by F. C. Ostermayer and Andrew J. Riski, of the board of trustees of said society, and Mr. Justice Mitchell indicates that the action may be brought in the general name which describes them all, as well as when it is accompanied by the phrase "in behalf of themselves and all others interested."

In the case of Ryerss v. Trustees of the Presbyterian Congregation of Blossburg, 33 Pa. 114, an action in *assumpsit* was brought by James H. Gulick, William Alworth and Clarendon Rathbone, trustees of the Presbyterian Congregation of Blossburg, against Joseph W. Ryerss, to recover a subscription of $100 toward the building of their church. Among other objections raised in the court below was that the plaintiff, being an unincorporated association, did not have the right to sue. Mr. Justice Woodward, in delivering the opinion of the Supreme Court, said: "Whether the Presbyterian Congregation of Blossburg were a duly constituted corporation or only a religious society bound together by articles of association, it was a legal party competent to sue and is named on the record as plaintiff." And the appeal of the defendant was dismissed.

In the case of Klein v. Rand, 35 Pa. Superior Ct. 263, an action was brought by Ike Klein and others, lately trading as Commercial Co-operative Association, against Israel or Isador Rand, and the action was in *assumpsit*. A nonsuit was entered in the court below and the error assigned upon appeal was the refusal to take off the non-suit, and Henderson, J., in delivering the opinion of the Superior Court, said, *inter alia:* "The association was composed of about 160 members. The action was brought in its name by the president, secretary and three other members, one of whom at least was a director. It is a well-established rule that in the case of unincorporated associations having a large membership actions may be brought by some of the members in their own names in behalf of all. This modification of the usual requirement as to necessary parties is an equitable exception suggested by convenience. Where the number of members is very large, it would be, if not impracticable, very inconvenient and certainly unnecessary to include all their names as parties when the right of action exists in the association and when individuals are named who may be made liable for costs. Where the action is brought for all the parties in interest, the requirement of the law is met by the use of some of the individuals composing the organization: Story, Eq. Pl., § 107; Phipps v. Jones, 20 Pa. 260; Liederkranz Singing Society v. Germania Turn-Verein, 163 Pa. 265; Fletcher v. Gawanese Tribe, 9 Pa. Superior Ct. 393. The right of the association to sue is not questioned. The benefit of the action, if any, accrues to the association and the presumption is that the interests of all are subserved by the proceeding. A judgment in favor of the association would protect the defendant, and he has no interest in the disposition of what he may pay thereon. The officers of the association were the actors in bringing the suit and were in the discharge of their official duties in so doing if the cause of action exists as claimed."

It seems, then, that a common-law action may be brought by an unincorporated association either in the name of the association or the name by which it is generally known, provided it represents all of the parties in interest; or it may be brought in the name of certain members of the unincorporated association in behalf of themselves and all other persons interested. In the

present case the action is brought by the Insurance Commissioner as receiver for the William Penn Motor Indemnity Exchange. The receiver represents all of the parties in interest, and that means all of the policy-holders in the exchange, just as in the case of a corporation the receiver would represent the corporation and through it all of the stockholders; and it has been held that the receiver not only represents the corporation, but also the creditors: Cushing v. Perot, 175 Pa. 66; State Bank v. Kirk, 216 Pa. 452; Lyon v. Benney, 230 Pa. 117; People's Bank v. Stroud, 223 Pa. 33. The plaintiff, therefore, in this case represents all of the parties in interest, except the defendant, who, according to the papers filed, owes to the exchange the sum of $33. We can see no reason, either in justice or in equity, why the plaintiff is not entitled to bring this suit and why the defendant should not pay the amount which he owes; and, therefore, in our opinion, the statutory demurrer should be dismissed.

*Order.*—Now, to wit, Dec. 17, 1927, the statutory demurrer filed by the defendant is overruled and dismissed, and the defendant is required within fifteen days to file an affidavit of defense to the merits of this case.

From Wm. F. Schutte, Beaver, Pa.