Pyzdrowski *v.* Tarkowski et al., Appellants.

Argued April 27, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Alexander J. Bielski,* for appellants.

*James A. Danahey,* with him *Blair F. Gunther,* for appellee.

OPINION BY PARKER, J., September 27, 1939:

Anthony Pyzdrowski, who had entered into a written contract, executed by certain individuals claiming to represent St. Mary's Roman Catholic Congregation of McKeesport, for the erection of a church building, brought this action in assumpsit in the County Court of Allegheny County, to recover a balance claimed to be due on completion of the contract and acceptance of the building by the congregation. The defendants named in the action were "Rev. Anthony Tarkowski, Pastor, and Stanley A. Sierocki, Wincenti Sieradzki, John Traczynski, and Martin S. Kranc, officers or members, and all other members constituting the St. Mary's Polish Roman Catholic Church and congregation of McKeesport, Pa., an unincorporated association."

The defendants filed a petition asking for a rule to show cause why the statement should not be stricken from the record and the proceedings dismissed. The defendants contended that such right of action, if any, as the plaintiff might have was cognizable only in equity and the county court did not have jurisdiction to entertain such actions. A rule to show cause was granted and after argument the court below discharged the rule and the defendants were given fifteen days to file an affidavit of defense. The defendants have appealed. We are all of the opinion that that court entered the proper order.

By the Act of May 5, 1911, P. L. 198, §6(a) as amended by the Act of April 24, 1935, P. L. 51 (17 PS §626) the County Court of Allegheny County is given jurisdiction "in all civil actions wherein only a money judgment is sought to be recovered ...... in which the sum demanded ...... does not exceed twenty-five hundred dollars." The plaintiff here seeks a money judgment only. The primary question involved is, therefore, whether an action in assumpsit will lie against an unincorporated religious society or church to recover a balance due for the erection of a church building.

It was the rule at common law as it is the rule today in this state that an action at law cannot be maintained against an ordinary unincorporated association eo nomine or in its common name alone: *Grant v. Carpenters' Dist. Council of Pgh.*, 322 Pa. 62, 185 A. 273; *Maisch v. Order of Americus*, 223 Pa. 199, 72 A. 528; *Fletcher v. Gawanese Tribe*, 9 Pa. Superior Ct. 393. Also see *Moffat Tunnel League v. U. S.*, 289 U. S. 113, 118, 53 S. Ct. 543, 545.

The attitude of the courts of this state on the question of procedure involved here is illustrated by numerous decisions dealing with the remedies applicable in enforcing claims against unincorporated beneficial societies, particularly where the claim has been by a member for benefits. By the Act of April 28, 1876, P. L. 53 (40 PS §1015) it is provided that members of unincorporated lodges paying periodical or funeral benefits shall not be individually liable for the payment of such benefits or other liabilities of the lodge or organization "but that the same shall be payable only out of the treasury of such lodges or organizations." In *Fletcher v. Gawanese Tribe*, supra, the defendant was sued eo nomine. It was there said (p. 396, 397): "The suit should have been against all or some (representing themselves and others interested) of the members associated under the joint title ...... This act [April 28, 1876] places the organizations described in a middle ground between quasi-partnerships and corporations. While it takes from the members a personal liability, it makes no provision for a direct means of reaching the treasury." It was then held that a common law suit could not be maintained but that the remedy was in equity. The same principles were applied in *Maisch v. Order of Americus*, 34 Pa. Superior Ct. 436, and on appeal the decision in that case was affirmed by the Supreme Court, supra. Also see *Gottselig v. Cigarmakers I. U. of America*, 76 Pa. Superior

Ct. 273; *Mervish v. Cades,* 98 Pa. Superior Ct. 430; *Wolfe v. Limestone Council,* 233 Pa. 357, 82 A. 499.

The Act of 1876 placed such beneficial societies in a special class by exempting the members from individual liability. An action could not be maintained against the individuals and the association could not be sued eo nomine. Consequently the proper action in such cases was in equity. By §13, cl. 5 of the Act of June 16, 1836 (17 PS §281) the several courts of common pleas were given the jurisdiction and powers of a court of chancery, so far as relates to the supervision and control of unincorporated societies or associations.

But we are here dealing with a suit against an unincorporated religious society, a church. Such organizations from the early history of Pennsylvania have been viewed in a different light with respect to remedies, whether appearing as plaintiffs or defendants. Corporations were almost unknown to the settlers of the province, but unincorporated congregations for religious worship were frequent. The maintenance of church buildings and parsonages or rectories has been a usual incident to a local unincorporated church organization: Chief Justice GIBSON in *Witman v. Lex,* 17 S. & R. 88, 91; Stevick on Unincorporated Associations, §3.

By the Act of February 6, 1731, 1 Sm. L. 192 (10 PS §121) the right of such local religious organizations to hold land as though they were in fact corporations or had a distinct entity was affirmed. Section 45 of the Constitution of 1776 (5 Sm. L. 430) declared that religious societies should be "encouraged and protected in the enjoyment of the privileges, immunities, and estates, which they were accustomed to enjoy, or could of right have enjoyed under the laws and former constitution of this state." The Act of August 2, 1842, P. L. 458, §32 (10 PS §21) and the Act of April 26, 1855, P. L. 328, §7, with its numerous amendments (10 PS §81) have shown the same attitude on the part of the legislature toward such religious societies.

In *Phipps v. Jones,* 20 Pa. 260, 263, the Supreme Court said: "There ought to be no doubt about the right of unincorporated religious societies to sue on a contract made with them in their associate capacity and for the legitimate purposes of their association, even though there be no persons named or described in the contract as trustees or committee-men on behalf of the society. Such associations have always, and especially since the Act of 1731, been recognized as having an associate and quasi corporate existence in law, with power to hold land and build appropriate houses, and of course with power to acquire rights by contract, and to vindicate them. And if the English common law forms are insufficient for such cases, we admit the infusion into our law of the plain equity principle that allows a committee of voluntary societies *to sue and be sued* as representatives of the whole: 1 Bro. C. C. 101; 13 Ves. 544; Story's Eq. Pl. §116. There is, therefore, no difficulty about sustaining this action, if it has a contract to rest upon." [Italics supplied.]

This action is to recover a balance claimed to be due plaintiff on a written contract for the erection of a church building which had been accepted by the church and the same persons who signed the contract on behalf of the congregation are named as defendants. In a case on all fours with the present one the late Judge JAMES I. BROWNSON, in *Galati v. Flitanofsky,* 1 Wash. Co. Rep. 161 said: "The plaintiff here is not seeking relief which can be afforded only by the use of distinctively chancery forms of procedure. He seeks to collect out of the real estate owned by this religious society a debt which it owes him, and although his standing to come into court and ask that this realty be sold for the purpose of paying his claim rests upon the fact that he is invested with an equitable right of action against the unincorporated religious society, it is perfectly practicable, by the use of common law forms of procedure, to administer relief to him."

This statement is applicable notwithstanding the Act of 1836 granting chancery powers to the courts of common pleas: *Liederkranz Singing Society v. Germania Turn-Verein,* 163 Pa. 265, 29 A. 918; *Klein v. Rand,* 35 Pa. Superior Ct. 263. We, therefore, hold that an action in assumpsit may be maintained by a contractor against an unincorporated religious society for the recovery of such sums as may be due the contractor on account of the erection of a house of worship for the society and that the County Court of Allegheny County has jurisdiction of the cause of action set forth in the statement of claim.

Our decisions, as has been shown, have held consistently that an unincorporated association may not be sued eo nomine, but it has been held with equal consistency that where the membership is large, the action may be brought against some of the members as representing themselves and all other members providing the members named are fairly representative under the circumstances: *Fletcher v. Gawanese Tribe,* supra; *Klein v. Rand,* supra; *Liederkranz Singing Society v. Germania Turn-Verein,* supra; *McNeal v. Farmers' Market Co.,* 43 Pa. Superior Ct. 420; 25 R. C. L. p. 74. The principle is adopted from equity and applied to actions at law. Here the building committee who represented the church and who executed the contract were properly named as defendants as representing themselves and all others having the same interest.

The comparatively recent case of *Grant v. Carpenters' Dist. Council of Pgh.,* supra, is in harmony with our conclusions. There the suit was against the defendant eo nomine and an offer to amend by adding the names of trustees and officers was made after the statute of limitations had run. It was held that there was no legal entity before the court.

While we are not concerned with that question now,

124

the liabilities of the members of an unincorporated association are discussed in the leading case of *Ash v. Guie*, 97 Pa. 493, and *Dunlap Printing Co. v. Ryan*, 275 Pa. 556, 560, 119 A. 714.

The order of the court below is affirmed, affidavit of defense to be filed within fifteen days after the return of the record.