No. 28,453.

I. M. MONEY and H. E. MUSSER, *Appellees*, v. S. J. SAFFORD and
E. S. SAFFORD, *Appellants*.

(274 Pac. 269.)

Opinion filed
February 9, 1929.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Sidney
L. Foulston* and *Lester L. Morris*, all of Wichita, for the appellants.

*P. D. Gardiner, Burt Comer* and *Harold H. Malone*, all of Wichita, for the
appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover upon a drilling
contract. S. J. Safford and son were the owners of oil lands and
they entered into a contract with I. N. Money and H. E. Musser to
drill an oil well on their land. The contract was executed and the
well proved to be a producer. A second contract on the same terms
was made between the parties to drill another well to a depth of
2,600 feet, certain parts of the casing to be furnished by the drillers
and other parts by the Saffords. The drillers were to furnish all
equipment, fuel, water and labor necessary to drill the well to the
depth of 2,600 feet, or to what is termed the Varner sand, for which
they were to receive $11,000, and also to dig a slush pond to take
care of all water, and to mud off gas and oil encountered before
reaching the Varner sand. There was a provision that if oil was
not found at the depth of 2,600 feet, or the Varner sand, the drillers
were to drill to an additional depth of 100 feet at the price of $70
per day. They were to furnish the equipment used in the extra
drilling, and in case it turned out to be a dry hole, to pull all the

pipes and to plug the well. Another stipulation was that when the casing was set on top of the 2,600 foot, or Varner sand, and the well found to be a producer of oil of commercial value, the drillers were to tube and rod the well, which was to be included in the contract price, and that during the drilling they were to keep and furnish to Safford an accurate log of the well. The well was drilled, but full payment was not made, and this action was brought to recover the balance due under the contract.

Plaintiffs alleged that they drilled the well to a depth of 2,602 feet in good workmanlike manner and at that depth the well was in good condition and free from water, and that upon the request of defendants they afterwards drilled to a lower depth and the well was accepted; that they continued to drill under the supervision of defendants for three and one-half days. They alleged that, on September 1, 1925, it was drilled in as a producing well, when it was taken over by the defendants. It was further alleged that $5,000 of the contract price had been paid, leaving due $6,000 more for drilling to a depth of 2,600 feet, and $245 for three and one-half days' work done while working for the defendants. They asked judgment for $6,245.

The defendants denied that the well had been drilled in a workmanlike manner, alleged that the casing was set at a depth of 2,552 feet, leaving an uncased hole between the depth of 2,552 feet and the 2,600 feet through which water entered the well, that in placing a casing in the well joints were bent so that it was necessary to swage out the joints in order that drilling tools could be gotten through, and that this operation weakened and damaged the joints and thus permitted water to escape into the well from outside of the casing. That by reason of the failure of plaintiffs to properly complete the well, the defendants were obliged to pay out large sums of money in an effort to shut off the water. They asked damages for nonperformance of the contract and for the material and labor furnished by defendant to protect the well from incoming water. The plaintiffs replied denying averments of nonperformance and alleging that the defendants accepted the well as a complete fulfillment of the contract and proceeded with drilling under their own supervision.

The only matters argued were as to questions of fact relating to the breach or fulfillment of the contract and whether there was

an acceptance of the well by the defendants when it was drilled to a depth of 2,600 feet or to the Varner sand. It appears that when that depth was reached there was a slight showing of oil and there was much testimony to the effect that the well was free from water at the time and in good condition. In fact it is shown that water had to be poured into the well in order that further drilling might be done. Sand, it appears, was reached at about 2,557 feet and the lower casing was set at that point, and the drilling was continued down to the depth of 2,602 feet. The Saffords, it appears, were present at the well much of the time when the well was being completed and prior to the taking over of the contract, and they had supervision of the work while the drilling was continued beyond the depth of 2,602 feet. They carried down the well about 20 feet deeper and found oil, and also water began to come into it. Whether the water came from the bottom or from above because of improper work done by the plaintiffs before they reached the depth of 2,602 feet and before it was taken over by the defendants was an issue in the case. The following special findings of fact were returned by the jury on the material issues in the case:

"Q. 1. Do you find that plaintiffs drilled the well to a depth of 2,602 feet? A. Yes.

"Q. 2. Do you find that Safford and son took over the well on August 31, 1925, at a depth of 2,602 feet? A. Yes.

"Q. 3. If you answer the foregoing question in the affirmative, state if Safford and son continued drilling thereafter, under their own direction and supervision? A. Yes.

"Q. 4. Do you find that the well was in good condition and free from water at a depth of 2,602 feet? A. Yes.

"Q. 5. Do you find that Money and Musser set the 6⅝-inch casing at the direction of Safford and son? A. Cannot answer (lack of evidence).

"Q. 6. Do you find that the water complained of was 'bottom of the hole' water? A. Yes.

"Q. 7. Do you find that the water complained of in said well was the result of drilling done by Safford and son after the 2,602-foot depth had been reached? A. Yes."

The court also submitted to the jury other questions which were answered as follows:

"Q. 1. At the time the plaintiffs claim they ceased work on the well about August 31, 1925, was the 6⅝-inch casing set in a good and workmanlike manner. A. Yes.

"Q. 2. At the time the plaintiffs claim they ceased work on the well about August 31, 1925, was the 6⅝-inch casing so set as to keep the water out of the well? A. Yes.

"Q. 3. At the time the well reached a depth of approximately 2,602 feet did the defendants accept the well as having been completed by the plaintiffs in accordance with the contract, or to the satisfaction of the defendant? A. Yes.

"Q. 4. At or before the defendants took charge of the well and began directing the work to be done thereon, did they make any claim to the plaintiffs that the plaintiffs had not performed their contract? A. No.

"Q. 5. What sum, if anything, do you find that the plaintiffs are entitled to recover for work done after the well had been drilled to 2,600 feet? A. $245.

"Q. 6. If you find the defendants are entitled to recover damages, then state the total sum you may find them to have reasonably and necessarily expended in work on said well after it reached 2,600 feet and in an effort to shut off the water. A. $542.29.

"Q. 7. If you find the defendants are entitled to recover damages, then state how much you have deducted for their damages on account of the present value of the 5⁹⁄₁₆-inch casing and all the other tools, equipment and fittings that they may now have on hand and for which you allowed them a charge against the plaintiffs. A. None."

Besides the special findings the jury returned a verdict finding for the plaintiffs and assessing the amount of their recovery at $5,702.71 with interest thereon.

As stated, only questions of fact are presented on this appeal. Much testimony was produced relating to the performance of the contract by plaintiffs, and also as to the alleged acceptance of the work as complete by the defendants. A reading of the testimony satisfies us that there was substantial performance and, more than that, there was evidence tending to show an acceptance by the defendants as a fulfillment of the contract. The evidence is sufficient to show that the water which entered and injuriously affected the well did not come from the upper part of it which had been drilled while plaintiffs were in control, but rather that it did come from the bottom while the defendants were in control of the well, and when they probably drilled too deep into a stratum of water. It is contended that under the evidence the matter of acceptance of the well by the defendants should not have been submitted to the jury. Acceptance was definitely pleaded and there was competent testimony tending to show the turning over of the well to and acceptance by the defendants with an understanding of conditions. Defendants or at least one of them, Gene Safford, was frequently at the well during the drilling and completion of it. He was experienced in the matter of drilling of other wells on the same land and cannot

well claim inexperience or lack of judgment unless it was in permitting the drillers to go too far through the oil sand, to a water stratum, while he was in charge of the drilling. He admitted that he was in charge of the drilling at that time and gave orders to the drillers. During his supervision a good showing of oil was obtained at about 2,617 feet, but he kept on drilling until they reached a depth of 2,621 feet, and there was testimony that the well was dry and in good shape when he took charge and that he told one of the plaintiffs that "we have got a dandy well out there." Besides the well-established fact that there was an acceptance of the work of plaintiffs, there is abundant evidence which it is not necessary to set out to show a substantial compliance with the terms of the contract. The weight and force of the evidence were questions for the jury as shown by many authorities. Their findings and verdict settled the questions of fact and nothing is left for this court to do but to affirm the judgment. It is affirmed.