No. 45,518

AUGUSTA OIL CO., INC., *Appellee*, v. L. A. WATSON, *Appellant*.

(464 P. 2d 227)

Opinion filed January 24, 1970.

*W. E. Woodard, Jr.,* of Wichita, argued the cause and was on the brief for appellant.

*Fred R. Vieux,* of Augusta, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: Appeal is taken from a judgment against L. A. Watson for $10,181.97. The judgment is based on services ren-

dered by Augusta Oil Co., Inc. in drilling two locations for oil under separate written contracts. No oil was produced.

L. A. Watson defended the action on the contracts by attempting to prove failure of performance. He also counterclaimed for damages.

In reply the plaintiff (Augusta) alleged that any failure to perform the terms of the contracts was waived by the defendant (Watson) when he accepted the two holes. The holes were drilled to contract depth and plugged on orders by Watson.

Some preliminary facts are necessary to discuss the questions raised on appeal.

Watson was engaged in operating oil wells on leased premises. He owned oil leases on acreages which will be referred to as the "Spangler lease" and the "Daves lease." He desired to drill on these leases.

On January 22, 1964, Watson entered into a written drilling contract with Augusta. The essential terms of this contract will be set forth later. Augusta completed drilling operations on Spangler # 4 on or about February 2, 1964. Watson took charge of the drill site and attempted to bring in a producer. After considerable expense Watson plugged and abandoned the hole.

Thereafter on June 1, 1964, Watson entered into a second contract with Augusta to drill a hole on the Daves lease. Augusta completed drilling Daves # 1 on or about June 18, 1964. The hole was plugged and abandoned on orders from Watson.

Additional facts will be developed in discussing the particular points raised on appeal.

The terms of both drilling contracts are the same for purposes of this appeal with the following exceptions. The contract to drill the Spangler # 4 location required Augusta to drill to a depth of approximately 2350 feet, at which depth the Layton formation was expected. The contract to drill the Daves # 1 location required Augusta to drill to a depth of approximately 3100 feet, at which depth the Mississippi formation was expected. The contract price on Spangler # 4 was $2.15 per foot drilled and on Daves # 1 it was $2.30 per foot drilled.

Both contracts contained the following provisions:

"1. WELL PERMIT: (Provision not pertinent.)
"2. DRILLING EQUIPMENT: (Provision not pertinent.)
"3. CASING RECORD: (Provision not pertinent.)
"4. STRAIGHT HOLE SURVEY: Contractor [Augusta] shall drill a hole 3°

vertical and acceptable to Operator [Watson]`at all depths; run straight hole measuring device every 500' and at total depth, each survey to be bottomed on float with measuring line for check on rotary pipe in hole, with proper notations made on log. Contractor shall furnish Operator with original record or instrument reading of each survey. If deviation exists beyond limits above described, Contractor shall at his own expense, cement off, redrill and straighten hole, or if necessary, drill a new hole.

"5. MUD: (Provision not pertinent.)

"6. MEASUREMENT, SAMPLES AND LOGS: Contractor [Augusta] agrees to notify Operator [Watson] immediately upon discovery of any Oil or gas showings; to collect and furnish to Operator as directed samples of all formations encountered; and to keep accurate measurements at all times of the depth of the hole, and' to take satisfactory measurements of such depths at all points selected by the Operator; to make and deliver to Operator daily reports of the progress of the drilling of said well, if directed by Operator; to deliver to Operator an accurate record of the drilling time *a representative of Operator to be on or about the well at all times and to have access to all reports, records, logs, samples and cores.* (Emphasis supplied.)

"7. TESTING: Contractor [Augusta] agrees to suspend actual drilling at Operator's [Watson's] request to permit Operator to core and/or test as it may desire, running for Operator all coring and testing equipment.

"8. DAY WORK: Day work as herein designated shall consist of the following:

"(a) Coring.

"(b) Time consumed in taking Drill Stem Tests.

"(c) Schlumberger or electric log surveys.

"(d) Testing and circulating for samples.

"(e) Shut down time when occasioned at Operator's [Watson's] request.

"9. RELIEF FROM FAILURE TO PERFORM: (Provision not pertinent.)

"10. INSURANCE: (Provision not pertinent.)

"11. CONTRACT PRICE: (Generally this provision specified price per foot drilled plus day work specified in paragraph 8 to be paid at the rate of $20.00 per hour. All sums were made due and payable at the completion of the rotary work.)

(Paragraph 12 was omitted from the contract.)

"13. PLUGGING AND ABANDONMENT: In the event that said well, after being completed to the depth herein provided for, shall be determined a dry hole and no oil string of casing run, and further that cable tool work is not necessary, then Contractor [Augusta] shall plug and abandon the hole in accordance with the Kansas State Corporation Commission rules and regulations at Operator's [Watson's] expense.

"14. IMPENETRABLE SUBSTANCE OR FORMATION: (Provision not pertinent.)"

Appellant Watson contends a failure to perform was established, in that Augusta failed to furnish him with the original record of each straight hole survey as required in paragraph 4 of the contracts.

Appellee Augusta points out that Watson or his representative

was on or about the wells at all times during the drilling and had access to all reports, records, logs, samples and cores as provided in paragraph 6 of the contracts. Watson had a right to request straight hole survey tests at any time during the drilling as provided in paragraph 7, but failed to do so. Under these circumstances Augusta contends that Watson waived performance of this condition and accepted performance by accepting the completed holes without making a request for records or further testing.

The court found that straight hole survey data was not furnished to Watson and that Watson never requested these records or tests. Watson ordered the pipe set on Spangler # 4 and he ordered Daves # 1 plugged without requesting further testing when he knew he had not received these records from Augusta. The court further found there was no evidence that the holes deviated more than three degrees from vertical or that Watson suffered loss from the failure of Augusta to furnish instrument readings of straight hole surveys.

At the trial of this case Jim Craig, a geologist employed by Watson, testified he was present during drilling operations on Spangler # 4 and Daves # 1. He kept samples and drilling time logs on these operations. He testified that they hit Layton sand in the Spangler hole at 2406 feet. This was nine feet lower than he would have liked to see it. He said the well wasn't productive for one of two reasons, either insufficient petroleum accumulation or mechanical failures upon completion. He testified he had no reason to think the hole was crooked and there was no evidence of the same.

L. A. Watson testified that after working on the Spangler hole for thirty days he plugged and abandoned it and that after the Daves hole was drilled he ordered it plugged and abandoned as a dry hole. After abandoning the Spangler hole he made payments on the contract to Augusta. $1,000 was paid in April and $2,500 was paid in June. On June 20, 1964, after both holes had been plugged and abandoned, he first discovered there were no straight hole survey records. He made no complaint to Augusta concerning performance until he filed answer and counterclaim October 17, 1967.

The law applicable to performance of oil drilling contracts is well settled. Each party to a contract to drill for oil is under a duty to substantially perform the obligations imposed upon him by the contract unless the obligations are waived, excused or discharged by action or breach by the other party. The same legal principles apply to these contracts that apply to any other contract.

What constitutes substantial performance depends upon the facts of each case. One who has contracted to drill an oil well may claim performance or defend an action for non-performance by proving the owner accepted the well after the drilling had been completed. An unqualified acceptance of the well waives further performance by the contractor and the owner cannot thereafter complain of the quality of the performance which was or should have been apparent when the well was accepted. Acceptance in such case is a question to be determined by the trier of facts. (*Money v. Safford*, 127 Kan. 520, 274 Pac. 269; Summers, Oil and Gas [permanent edition] Vol. 4, § 685; Mills and Willingham, Law of Oil and Gas, § 212, p. 303.)

In *Money v. Safford*, supra, it was held:

"In a controversy over the performance of an oil drilling contract and whether there had been an acceptance of an oil well as a fulfillment of the terms of the contract, the jury found, on substantial though disputed evidence, that the contract had been performed and that there had been an acceptance of the well as complete. On an appeal the finding of the jury is held to settle the disputed questions of fact and to require an affirmance of the judgment." (Syllabus.)

(See also *Capper v. Paper Co.*, 86 Kan. 355, 121 Pac. 519.)

Under paragraph 6 of these contracts a representative of Watson was authorized to be on or about the well at all times and to have access to all reports, records, logs, samples and cores. This right is referred to in the industry as "platform privileges". Under paragraph 7 of the contracts Watson could request any tests he desired during drilling operations and Augusta agreed to suspend drilling to permit the same. Watson or his representative was present throughout the drilling operations. They had access to all tests run. They made no request for straight hole survey tests. Paragraph 4 clearly provided if a deviation in the hole existed Augusta could correct the same and continue drilling to contract depth and fulfill the contract. The tests to determine the percentage of deviation were neither requested nor received by Watson. The holes were plugged and abandoned under orders from Watson. He thereafter made substantial payments on the Spangler contract. No mention of lack of performance was made to Augusta until after the present action was filed.

Under the foregoing facts and circumstances the trial court as trier of the facts determined there had been a waiver and an unqualified acceptance of performance by Watson. There is sub-

stantial evidence to support that finding and on appeal we affirm the trial court's judgment as to this acceptance. (*Sullivan v. Sullivan,* 196 Kan. 705, Syl. ¶ 1, 413 P. 2d 988; *Money v. Safford,* supra.)

The trial court refused appellant a new trial on ground of newly discovered evidence. Appellant produced an affidavit by Sidney Rogers, a former employee of Augusta, stating he worked on both wells as a driller and that no straight hole surveys were run on these holes. Error is urged on appeal.

When facts are fully within the knowledge of a party litigant at the time of trial such facts cannot be denominated newly discovered evidence and used as a basis for obtaining a new trial. (*State v. Eaton,* 199 Kan. 192, 428 P. 2d 847.) When the evidence urged as newly discovered evidence is not of such character or strength as would compel a different result or decision denial of a new trial is proper. (*Mourning v. Harrison,* 154 Kan. 242, 118 P. 2d 558; *Wilcox v. Colwell,* 193 Kan. 617, 621, 622, 396 P. 2d 315.)

Watson and his geologist were present at the drill sites during drilling operations. Both the nature and the source of this information were known or should have been known to Watson at the trial. This is not newly discovered evidence within the purview of K. S. A. 60-259 (*g*).

This evidence relates solely to the question of whether Augusta failed to make straight hole surveys. In view of the finding of the trial court that such failure, if any, was waived and that performance was accepted by Watson the evidence would not compel a different result or decision. It does not support a motion for new trial on the ground of newly discovered evidence.

Appellant next argues the judgment cannot stand because Augusta failed to introduce evidence of its corporate existence as alleged in its amended petition.

Appellant's answer contains the following statement:

"Defendant is without knowledge or information sufficient to form a belief as to the truth of paragraph one of plaintiff's amended petition wherein it was stated that plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Kansas, with the principal place of business at Augusta, Kansas, and thereby deny the same. . . ."

No evidence was introduced by either party on this subject. There is no pre-trial conference order defining the issues for trial.

K. S. A. 60-209 (*a*) provides:

"(a) *Capacity.* It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. *When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of any party to sue or be sued in a representative capacity he shall do so by specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge." (Emphasis added.)

This provision in our code was taken from Rule 9a of the federal rules of practice. The following statement is made concerning what constitutes a "specific negative averment" in 1A Barron and Holtzoff (Wright) Federal Practice and Procedure § 301:

". . . [A] denial of knowledge or information sufficient to form a belief with reference to plaintiff's appointment as administrator is insufficient to raise the issue of plaintiff's incapacity to sue. The objection to capacity must be raised as provided in the rule or it will be waived. . . ."

The above statement is supported by the holding in *Kucharski v. Pope & Talbot,* (D. C. N. Y. 1944), 4 F. R. D. 208.

A denial based upon a statement that defendant is without sufficient knowledge or information to form a belief as to plaintiff's legal existence as a corporation is not a specific negative averment sufficient to raise the issue of plaintiff's capacity to sue as required by K. S. A. 60-209 (a). (*Volkswagenwerk Aktiengesellschaft v. Dreer,* (1966) 253 F. Supp. 37.)

Therefore, the issue of plaintiff's corporate existence was not properly raised and no evidence by plaintiff was necessary to support this allegation in the petition.

One final matter should be mentioned. Defendant's counterclaim for damages was based upon plaintiff's failure to perform the contract. The claim of failure to perform was based upon an allegation the holes drilled deviated more than three degrees vertical. The court disposed of the counterclaim by the following finding:

"5. The court further finds that even though the Augusta Oil Company did not furnish Mr. Watson with a straight hole survey that there's been any proof here that caused him any damage. There's no evidence in this case that this hole deviated 3° from vertical."

The evidence of acceptance and waiver has been reviewed and adequately supports a denial of defendant's counterclaim. We find nothing in the other contentions advanced by the appellant which requires further discussion or warrants a reversal of the judgment.

The judgment is affirmed.