PACE CONSTRUCTION
COMPANY, Appellant,

v.

MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION,
Respondent.

and

Girardeau Contractors, Inc.,
Intervening Respondent.

PACE CONSTRUCTION
COMPANY, Appellant,

v.

MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION,
Respondent,

and

Jefferson Asphalt, Co.,
Intervening Respondent.

Nos. WD 40470, WD 40699.

Missouri Court of Appeals,
Western District.

Aug. 23, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 1988.

Application to Transfer Denied
Nov. 15, 1988.

R.W. Miller, Sherman Botts, Kansas
City, Greg Schroeder, Jefferson City, for
respondent.

Lehman Finch, Cape Girardeau, for inter-
vening respondent Girardeau Contractors,
Inc.

Robert Hyder, Jefferson City, for inter-
vening respondent Jefferson Asphalt Co.

Before KENNEDY, C.J., and
TURNAGE and BERREY, JJ.

BERREY, Judge.

The present case involves the consolidation of two appeals by Pace Construction Company (Pace) challenging the actions of the Missouri Highway and Transportation Commission (Commission) in regard to the award of contracts in two competitively bid public projects.

In the action filed by Pace against the Commission in which Girardeau Contractors, Inc., (Girardeau) intervened the facts are as follows. In the fall of 1987, the Commission invited bids on a public construction project involving bridge rehabilitation and resurfacing on Interstate 55 in New Madrid County, Missouri. The three bids received by the Commission were opened on November 25, 1987, and publicly read aloud. The Commission's staff tabulated the bids after the opening pursuant to the Missouri Standard Specifications for Highway Construction, 1986. Pursuant to § 102.6 of the Standard Specifications, each bidder specifies a unit price for each line item in the bid. This unit price is then multiplied by the quantity specified for each respective line item to arrive at an extended price. These extensions are then totalled. This tabulation is then compared to the tabulations of the other competing bids and the contract is then awarded to the lowest bidder. Based upon this tabulation, Pace was apparently the lowest bidder, with a bid of $2,267,152.39. Girardeau was apparently third with a bid of $2,851,588.68.

Upon closer examination of the Girardeau bid, the Commission discovered a discrepancy in one of the line items. Item No. 617–50.10, "relocating temporary traffic barrier, per linear foot," had a unit price of $316.00. The estimated quantity of this item was 2,330. The extended price, handwritten by the bidder Girardeau, was shown as $7,362.80, a figure which obviously is not the product of $316.00 multiplied by 2330.

After the discrepancy was discovered, the Commission tried to determine what price was intended by Girardeau. The Commission compared this item in the Girardeau bid to the other bids and its own estimates. It also looked at the worksheets used by Girardeau in preparing the bid. The Commission determined that the correct price of the item in the Girardeau bid was $3.16 ($7,362.80 divided by 2330). The Commission met on December 11, 1987 and corrected the price on Item No. 617–50.10, changing the $316.00 figure which would yield an extended price of $736,280.00, to a figure of $3.16 for an extended price of $7,362.80. This change was then reflected in the total of Girardeau's bid, which corrected as $2,122,671.48. Based upon this figure Girardeau, as low bidder, was awarded the contract.

Pace contends that the Commission erred in interpreting the Girardeau bid in this fashion. They believe that the unit price of $316.00 was not a clerical error and that § 102.6 of the Standard Specifications which states that unit price will govern in the case of discrepancies should be followed. Thus, Pace contends that the extended price of $736,280.00 is the correct figure to use for tabulation of the entire amount bid and this tabulation makes them low bidder.

After the Commission changed the Girardeau bid, Pace filed an action for declaratory judgment, temporary restraining order and preliminary and permanent injunction in the Cole County Circuit Court against the Commission. Girardeau intervened in the action. The court denied Pace's petition for a temporary restraining order and preliminary and permanent injunction, finding in favor of the Commission and Girardeau. This appeal followed.

The suit filed by Pace against the Commission in which Jefferson Asphalt Co. (Jefferson) intervened, involves a similar set of circumstances. On April 29, 1988, the Commission opened bids submitted on a project combining several projects in Maries County, Osage County and Gasconade County. Again, the Commission followed the tabulation procedures of § 102.6 in the Standard Specifications. Based upon this

tabulation, Pace apparently submitted the lowest responsive bid at $1,070,526.05. Jefferson was apparently the second lowest bidder at $1,190,676.43.

A discrepancy was found in Item No. 614–10.10, "grates and bearing plates, per pound." In Jefferson's bid the unit price was given at $150.00 and the quantity listed for the item was 1,090, which would yield an extended price of $163,500.00. The handwritten extension price totalled $1,635.00. Once again, after investigation, the Commission determined that Jefferson's unit price of the item, $150.00, was an error and corrected the figure to $1.50 (1635.00 divided by 1090). Based upon this correction, the Jefferson bid totalled $1,028,811.43 and was, thus, the lowest responsive bid on the project. The Commission awarded the contract to Jefferson.

Pace disputes this interpretation of the bid, arguing that because unit price is used in tabulating the bids, the extended price was in error and thus, as lowest bidder, they should have been awarded the contract.

Pace filed suit in the Cole County Circuit Court for declaratory judgment, temporary restraining order and preliminary and permanent injunction against the Commission. Jefferson intervened in the action. The court ultimately ruled against Pace and this appeal followed.

The two cases outlined above were consolidated for the purposes of this appeal. In addition to the appeal filed by Pace, a motion to dismiss was filed by respondent Jefferson and this motion was taken with the case. The motion to dismiss raises the question of whether Pace lacked standing to bring the appeal. This question was also raised by the Commission at the lower court level. As the question of standing is antecedent to any review on the merits of the case by this court it must logically be considered first.

Essentially, the inquiry on this issue can be reduced to two questions: (1) when does the question of standing need to be raised?;

and (2) does Pace have standing to maintain this action?

Pace maintains that this court has no authority to review the issue regarding taxpayer standing because the respondents failed to preserve the issue in that they failed to comply with the notice of appeal requirements of Rule 81.04. They point to *State ex rel. Ashcroft v. Marketing Unlimited of America, Inc.*, 613 S.W.2d 440 (Mo.App.1981) in support of this contention, where that court held that, "[t]he filing of a timely notice of appeal is mandatory and is jurisdictional." *Id.* at 447. While this statement of law is correct, it is not complete and is, in a sense, misleading. The question of standing, "does not relate to the legal capacity to sue, a defense waived unless timely asserted ... but to the interest of an adversary in the subject of the suit as an antecedent to the right to relief." *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909 (Mo.App.1978). Furthermore, standing is said to be, "in a sense, jurisdictional in limine and so within the notice of a court, even on appeal, for dismissal." *Id. See also Champ v. Poelker*, 755 S.W.2d 383, 387 (Mo.App.E.D.1988). There can be no question that this court does indeed have the power to entertain the issue of standing. The lack of standing cannot be waived. *Brock v. City of St. Louis*, 724 S.W.2d 721, 725 (Mo.App.1987). "Regardless of the merits of appellants' claims, without standing, the court cannot entertain the action." *Champ v. Poelker*, *supra*, at 386–387.

As the issue of standing is properly before the court, the relevant inquiry now becomes whether Pace has the standing to maintain its action. It is clear, after an examination of relevant Missouri case law, that Pace has no standing to challenge the Commission's contract awards to Girardeau or Jefferson.

Pace brought both suits as a "taxpayer" no doubt to finesse the issue of standing. It could not otherwise maintain an action

against the respondents because a failed bidder has no standing to do so. The court in *State ex rel. Doniphan State Bank v. Harris*, 176 S.W. 9 (Mo.1915), speaks to the subject where it states that, "[r]elator has no right to maintain this proceeding simply in its capacity as an unsuccessful bidder, but must maintain it, if at all, in its role as a taxpayer...." *Id.* at 10 (citations omitted). *See also La Mar Construction Co. v. Holt County, R–II School Dist.*, 542 S.W. 2d 568 (Mo.App.1976). The question, thus, becomes whether Pace has standing to sue in its capacity as a taxpayer.

It is axiomatic that an aggrieved taxpayer may properly bring suit against a governmental unit to seek relief from an illegal or an improper action of that unit. *Champ v. Poelker, supra*, at 387. *See also Collins v. Vernon*, 512 S.W.2d 470 (Mo.App.1974); *Newmeyer v. Mo. & Miss. R.R. Co.*, 52 Mo. 81 (1873). The rationale of this rule is simply that a taxpayer has equitable ownership in public funds and the illegal expenditure of these funds subjects that taxpayer to further liability in the replenishment of money which was misappropriated. *Collins v. Vernon, supra*, 512 S.W.2d at 473.

It is true that, "[t]he mere fact that a taxpayer may have an interest in the litigation in addition to his financial interest as a taxpaying citizen is no defense, since his motive in exercising a legal right is not material." *Everett v. County of Clinton*, 282 S.W.2d 30, 34 (Mo.1955). This does not mean, however, that a taxpayer can initiate a taxpayers' action to protect a purely personal right or grievance in which other taxpayer do not have an interest. *Missourians For Separation of Church And State v. Robertson*, 592 S.W.2d 825, 839 (Mo.App.1979).

■ Merely being a taxpayer is not alone enough to possess standing. Missouri law imposes prerequisites which must be shown before a taxpayer may challenge the actions of a governmental unit. "In order to assert a taxpayer claim based on illegal or improper expenditure of funds plaintiff must allege facts showing special injury in the form of an increased tax burden." *Brock v. City of St. Louis, supra*, 724 S.W.2d at 725. Pace does not, and indeed cannot, show such facts. The actions of the Commission do not increase the taxpayers burden. The award of contracts to Girardeau and to Jefferson result in some savings to the taxpayer as the corrected bids were lower than the bids Pace wishes to have accepted.

Pace argues that its failure to allege a direct, pecuniary injury is not fatal to the establishment of its standing to sue as a taxpayer and relies on language in *Sommer* to the effect that a taxpayer who alleges that public funds are spent for an illegal or unconstitutional purpose has described an injury sufficient to challenge the governmental action. *Sommer v. City of St. Louis*, 631 S.W.2d 676, 679 (Mo.App. 1982).

■ Merely pleading that the public funds were expended illegally is not, in itself, enough to confer standing. *Champ v. Poelker, supra*, at 387. It is necessary to examine the petition to determine whether the ultimate damage takes the form of an increased tax burden necessarily arising from the facts alleged in the petition. *Id.*

Pace simply cannot meet the above criteria. The Commission's actions in the instant case afford no prospect of an increased tax burden on any taxpayer, not even Pace itself. The only "damage" that has occurred as a result of the Commission actions is to Pace in its capacity as failed bidder, not in its capacity as taxpayer. Potential damage is not enough. *Brock v. City of St. Louis, supra*, 724 S.W.2d at 725. Thus, dark prophesies regarding the future of Missouri's competitive bidding system and the prediction that such will increase the cost of public projects will not suffice to grant Pace the status it desires.

Pace lacks the requisite standing as taxpayer to challenge the actions of the Commission in awarding the contracts in question to Girardeau and Jefferson. It is not

entitled to any declaratory or injunctive relief. Because Pace has no standing, both causes No. 40469 and No. 40470, are remanded to their respective trial courts with instructions that the judgments be vacated and the causes dismissed.

Causes remanded with instructions.

All concur.