No. 94,123

BARRY D. VORHEES, *Appellant,* v. FRANCISCO J. BALTAZAR and THE ADMINISTRATOR OF THE ESTATE OF FRANCISCO J. BALTAZAR, *Appellee.*

(153 P.3d 1227)

Review of the judgment of the Court of Appeals in an unpublished decision filed March 10, 2006. Opinion filed March 16, 2007.

*Patrick R. Miller,* of Dezube Miller, P.A., of Overland Park, argued the cause and was on the brief for appellant.

*Zackery E. Reynolds,* of The Reynolds Law Firm, P.A., of Fort Scott, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Barry Vorhees filed suit against Francisco J. Baltazar, whom he knew to be deceased, and against the unappointed administrator of Baltazar's estate for personal injuries that Vorhees sustained in a two-vehicle accident. Although an administrator was eventually appointed, the district court dismissed the suit, and the Court of Appeals reversed in *Vorhees v. Baltazar,* No. 94,123, unpublished opinion filed March 10, 2006. This court granted the administrator's petition for review; our jurisdiction is under K.S.A. 20-3018(b).

The issues on appeal, and our accompanying holdings, are as follows:

1. Did the Court of Appeals err in allowing Vorhees to docket his appeal out of time? No.

2. Did the district court err in dismissing Vorhees' suit? Yes.

3. Was service of process effective upon the Administrator? Yes. Accordingly, we affirm the Court of Appeals, reverse the district court, and remand for further action consistent with this opinion.

## FACTS

The facts are not in dispute. On February 12, 2002, Barry D. Vorhees and Francisco J. Baltazar were the drivers involved in a two-vehicle accident. Baltazar died that day, and Vorhees suffered severe injuries. On January 26, 2004, 17 days before the statute of

limitations was to run, Vorhees filed suit against "Francisco J. Baltazar and the Administrator of the Estate of Francisco J. Baltazar" in the Linn County District Court. The petition recites that Baltazar was deceased, previously resided at 121 W. 4th, #704, Pittsburg, Kansas, and could "be served through the administrator of his estate."

A summons for the administrator of Baltazar's estate was issued that same day. However, 8 days later it was returned unserved because the administrator was "not known."

On February 11, 2004, the day before the statute of limitations was to run, Vorhees filed a "Petition for Issuance of Letters of Administration" pursuant to K.S.A. 59-2201 *et seq.* in the Linn County District Court, incorrectly reciting that Baltazar had lived in Linn County in "Pittsburg, Kansas." He requested that one Zachary S. Gerber be appointed as administrator and be issued letters of administration.

On April 22, 2004, Vorhees filed for a 30-day extension to serve the administrator. He alleged that venue for appointment of an administrator had been transferred to Crawford County—site of Pittsburg—and that appointment had not yet been made. The Linn County District Court granted Vorhees' motion, stating that "[p]ursuant to K.S.A. 60-203(a), Plaintiff shall have up to and including May 26, 2004, in which to serve Defendants."

On May 11, 2004, 2 years and approximately 3 months after the date of the accident, the Crawford County District Court appointed Steven Horak as the administrator of Baltazar's estate (the Administrator). After finding that Horak," named by petitioner as proposed administrator of the estate of Francisco J. Baltazar, having been duly appointed and qualified as administrator," the court issued letters of administration, incorrectly labeled "Letters Testamentary."

Approximately 2 weeks later, the Administrator went to Vorhees' attorney's office where the attorney's law clerk presented him with copies of the summons, petition, and other probate papers. In the clerk's presence, the Administrator executed the "Return on Service of Summons," which stated that the Administrator "acknowledge[d] receipt of service of summons and petition in the above

entitled case this 24th day of May, 2004." Vorhees never took any steps to amend his original petition, *i.e.,* to formally acknowledge that Horak had been appointed as administrator.

On June 14, 2004, the Administrator filed a motion to dismiss, asserting that Vorhees had failed to commence the suit within the statute of limitations because he sued "a deceased person, known to be deceased at the time the Petition was filed, and against a nonexistent administrator, also known not to exist at the time the Petition was filed." The motion also alleged insufficiency of process and insufficiency of service of process because of purported deficiencies in the law clerk's authority to serve.

The district court granted the motion to dismiss, reasoning that neither defendant had the capacity to be sued before the statute of limitations ran:

"No entity with the capacity to be sued ever existed during the entire two year period of the statute of limitations. Service of Process cannot 'relate back' if there is no legal entity to relate back to. . . . [T]he statute of limitations bars plaintiff's claim and this case should be and is hereby dismissed."

After Vorhees filed a motion to reconsider, the district court concluded that it lacked jurisdiction to hear the case.

The Court of Appeals reversed, holding that the district court had subject matter jurisdiction; Vorhees timely commenced the action before the statute of limitations lapsed as described in K.S.A. 60-203(a); and service was properly effected upon the Administrator.

## ANALYSIS

Issue 1: *The Court of Appeals did not err in allowing Vorhees to docket his appeal out of time.*

The threshold question on appeal is whether the Court of Appeals erred in allowing Vorhees to docket his appeal out of time. If so, the rest of the appellate issues are moot. The Administrator specifically asserts that Vorhees failed to make a showing of excusable neglect for his late filing.

The district court entered its order denying Vorhees' motion for reconsideration on January 19, 2005. Vorhees filed his timely notice

of appeal on January 24, 2005, and on March 9 filed a motion for leave to docket out of time, asserting:

"3. Appellant's counsel did not receive the documents that are required to accompany the docketing statement within the requisite time for filing the docketing statement.

"4. Appellant's counsel has not obtained a certified file stamped copy of the Notice of Appeal, Order on Appellant's Motion for Reconsideration, Order of Dismissal and all post-hearing motions in the above-captioned matter. These are included herein for filing with the remainder of the materials required for docketing this appeal. These combined documents complete the requirement for docketing the appeal."

On March 15, 2005, the Administrator filed his response, arguing that Vorhees' motion should be denied because the motion reveals "not excusable neglect but simple neglect." Three days later, the Court of Appeals granted Vorhees' motion, noting the Administrator's response.

Supreme Court Rule 2.04 (2006 Kan. Ct. R. Annot. 11) states that within 21 days of filing the notice of appeal, the appellant "shall" obtain and file various pleadings with the court. Based on the language of Rule 2.04, the Administrator argues that Vorhees was required to file the necessary documents by February 14, 2005; they were not actually filed, however, until March 18, 2005.

The Administrator further asserts that the Court of Appeals should have dismissed the appeal pursuant to Supreme Court Rule 5.05 (2006 Kan. Ct. R. Annot. 34). See *Carson v. Eberth*, 3 Kan. App. 2d 183, 185, 592 P.2d 113 (1979) (if an appeal is docketed late, remedy lies under Rule 5.05 under which dismissal is discretionary with the appellate court). Rule 5.05 states: "On the motion of a party . . . , the appellate court *may* dismiss an appeal on account of a substantial failure to comply with the rules of the court." (Emphasis added.)

As *Carson* states, dismissal under Rule 5.05 is discretionary. Discretion is abused only when no reasonable person would take the view adopted by the district court. *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003). Although the Administrator acknowledges this standard, he fails to show the Court of Appeals abused its discretion by denying his motion to dismiss the appeal

for Vorhees' failure to comply with the rules of the court. See 276 Kan. at 454 (party who asserts abuse of discretion bears the burden of showing it). Rather, he essentially asserts that Vorhees should have given better reasons for docketing late. Additionally, the Court of Appeals has acknowledged that jurisdictional rules should be read liberally "to allow litigants the opportunity to have their claims heard and determined." *Sanders v. City of Kansas City*, 18 Kan. App. 2d 688, 692, 858 P.2d 833, *rev. denied* 253 Kan. 860 (1993), *cert. denied* 511 U.S. 1052 (1994).

We conclude the Court of Appeals did not abuse its discretion.

Issue 2: *The district court erred in dismissing Vorhees' suit.*

*Jurisdiction*

In denying Vorhees' motion for reconsideration, the district court asserted that it had no jurisdiction:

"In effect, the plaintiff now argues that since an estate was opened one day prior to the running of the statute of limitations, the subsequent appointment of the special administrator several months later should relate back to the opening of the estate.

. . . .

"The mere fact that the plaintiff sought to open an estate one day prior to the expiration of the applicable statute of limitations does not save this action. The appointment of the special administrator well after the statute of limitations has expire[d] *still represents a bar to the Court asserting jurisdiction over this action.* See *Moore v. Luther*, 29 Kan. App. 2d 1004 (2001) and *Deeds v. Estate of Barker*, 74 P.3d 594 (2003)." (Emphasis added.)

The Court of Appeals reviewed the issue of jurisdiction, but ruled that jurisdiction existed, distinguishing *Moore v. Luther*, 29 Kan. App. 2d 1004, 35 P.3d 277 (2001). It noted: "[U]nlike *Moore*, when the district court dismissed Vorhees' action, an administrator had been appointed and served, *thus creating a party defendant and giving the court jurisdiction to hear the case.* See *Anderson v. Estate of Peterson*, No. 90,863, unpublished opinion filed September 24, 2004, slip op. at 3; *Moore*, 29 Kan. App. 2d at 1007." (Emphasis added.) Slip op. at 6.

Under the facts and the Administrator's allegations in the instant case, the purported threshold issue of jurisdiction is a red herring.

The relevant threshold issue is instead one of *capacity* to be sued, *i.e.*, whether the defendant named at the time of the petition's timely filing—"Administrator of the Estate of Francisco J. Baltazar"—was a legal entity capable of being sued. Under Kansas law, absent an administrator or an executor, an estate lacks the ability to sue or be sued. See *Ryan v. Williams, Adm'r,* 29 Kan. 487, 498-500 (1883). Clearly, at the time of filing, the decedent Francisco J. Baltazar was not, and would never be, capable of being sued and that issue is moot. See *Egnatic v. Wollard,* 156 Kan. 843, 856, 137 P.2d 188 (1943) (when a person dies, his or her individual capacity to respond in damages for torts ceases; thereafter, his or her financial obligations must be met by his or her estate).

We believe the lower courts' understandable confusion regarding jurisdiction as a necessary issue in this case begins with *Moore.* There, plaintiffs filed suit against Luther for injuries arising out of a car accident. Suit was filed after Luther died and 5 days prior to the expiration of the statute of limitations. One hundred and nineteen days after the lawsuit was filed, plaintiffs first learned of Luther's death. Pursuant to K.S.A. 60-225, which allows substitution if a party dies, plaintiffs attempted to substitute Luther's widow, who had previously been the executor of the estate. However, the district court denied the motion and dismissed the claim, finding that the statute of limitations barred the action.

The question in *Moore,* as stated by the Court of Appeals, was "[w]hether a litigant can use this statute [K.S.A. 60-225] to save a cause of action filed against a decedent." 29 Kan. App. 2d at 1008. As a preliminary matter, however, the *Moore* court determined that the district court lacked jurisdiction:

"There is currently no party defendant. A decedent does not have the capacity to be sued. [Citations omitted.] Therefore, Glen Luther is not a proper defendant. The plaintiffs have not effected the appointment of a special administrator to proffer as a substitute. Without adversarial parties, the trial court lacked subject matter jurisdiction over the case. *'In a suit or proceeding in personam of an adversary character, the court can acquire no jurisdiction for the purpose of trial or judgment until a party defendant is brought before it who actually or legally exists and is legally capable of being sued.'* 59 Am. Jur. 2d, Parties, § 41, p. 438. A dismissal based upon the statute of limitations [however,] 'operates as an adjudication upon the merits.' [Citations omitted.] *With no defendant in the lawsuit, the*

*trial court lacked jurisdiction to make a ruling on the merits of the case.* Therefore, we reverse the district court's ruling that plaintiffs' claims were barred by the 2-year statute of limitations and, correspondingly, that plaintiffs' case should be dismissed with prejudice." (Emphasis added.) 29 Kan. App. 2d at 1006-07.

We further believe the lower courts' confusion specifically stems from the above italicized language contained in 59 Am. Jur. 2d, which is based upon an 1881 case, *Ash v. Guie,* 97 Pa. 493. This 125-year-old theory, *i.e.,* a lack of jurisdiction because of a party's lack of capacity, has fallen into disfavor. As is stated in 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1559, p. 442 (1990):

"Some early decisions suggested that a defect in capacity deprives the court of subject matter jurisdiction, since a real case or controversy does not exist when one of the parties is incapable of suing or being sued, *although more recent authority has rejected that characterization.* To treat capacity problems as subject matter jurisdiction defects seems to exaggerate their significance." (Emphasis added.)

See *Swaim v. Moltan Co.,* 73 F.3d 711, 715 (7th Cir. 1996); *Summers v. Interstate Tractor & Equipment Co.,* 466 F.2d 42, 50 (9th Cir. 1972) ("The question of a litigant's capacity or right to sue or to be sued generally does not affect the subject matter jurisdiction of the district court."); and *Crane Constr. Co. v. Klaus Masonry,* 71 F. Supp. 2d 1138, 1141 (D. Kan. 1999).

In addition to these commentators' reliance upon *Van Dusen v. Barrack,* 376 U.S. 612, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964), as an indication that capacity is not a jurisdictional issue, they look for support to Federal Rule of Civil Procedure 9(a) and contrast its features with those of subject matter jurisdiction:

"Furthermore, it is difficult to reconcile the conception of capacity as a jurisdictional matter with the Rule 9(a) requirement that capacity be put into issue by specific negative averment, which indicates the draftsmen's intention that the issue be excluded from the case unless expressly raised by a party at the pleading stage. *This is in sharp contrast to the strong and clearly expressed policy against the waiver of subject matter jurisdiction defects.*" (Emphasis added.) 6A Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d, § 1559, p. 443 (1990).

Based upon our prior holdings and Kansas statute, we agree with these commentators that subject matter jurisdiction is distinguish-

able from legal capacity to sue or be sued. In *Mid-Continent Specialists, Inc. v. Capital Homes,* 279 Kan. 178, 106 P.3d 483 (2005), we discussed standing, a component of subject matter jurisdiction, and cited with approval a Missouri case revealing standing's distinction from capacity: " 'The question of standing "does not relate to the legal capacity to sue, a defense [see K.S.A. 2004 Supp. 60-209(a)] waived unless timely asserted . . . ." ' " 279 Kan. at 185 (quoting *Pace Const. v. Mo. Hwy. & Transp. Com'n,* 759 S.W.2d 272, 274 (Mo. App. 1988).

Additionally, Federal Rule 9(a), examined by the above commentators, served as a drafting model for K.S.A. 60-209(a). *Augusta Oil Co., Inc. v. Watson,* 204 Kan. 495, 501, 464 P.2d 227 (1970). Accordingly, we have held that when a defendant raises a plaintiff's lack of capacity to sue, its failure to comply with 60-209(a) must be regarded as a waiver of the defense. See, *e.g., Van Brunt, Executrix v. Jackson,* 212 Kan. 621, 624, 512 P.2d 517 (1973); *Augusta Oil,* 204 Kan. at 501. By contrast, we have held that subject matter jurisdiction, unlike capacity, cannot be waived and may be raised at any time, whether it be for the first time on appeal or even upon the appellate court's own motion. *Mid-Continent Specialists, Inc.,* 279 Kan. at 185-86.

Accordingly, although the defendant named at the time of the petition's timely filing, "Administrator of the Estate of Francisco J. Baltazar," may have lacked the capacity to be sued because Horak had not yet been appointed, and had still not been appointed by the 2-year anniversary of the date of the accident, there is no legitimate controversy concerning the district court's subject matter jurisdiction over this case.

*Statute of limitations*

The Administrator argues that because neither defendant was in existence before the 2-year anniversary date of the accident, dismissal was required under the statute of limitations. See K.S.A. 60-513. He essentially agrees with the district court that there was nothing to which the later appointment of the Administrator could relate back. In the alternative, he argues that if an administrator can be appointed after the 2-year anniversary date, a formal

amendment under K.S.A. 60-215 is required to properly name the actual administrator as defendant.

Vorhees responds that his action naming the two defendants was timely filed because it was performed within 2 years of the accident. However, if his petition filing was deficient, he argues that the deficiency was cured by his subsequent petition on February 11, 2004,—the day before the 2-year anniversary date—requesting an administrator be appointed. As a second alternative, he essentially argues that he put the outlines of the administrator clearly in place when he filed his original petition generically naming "the Administrator of the Estate of Francisco J. Baltazar." According to this argument, in effect Vorhees merely colored in the space within the Administrator outline 3 months later when Horak was formally appointed; as a result, no formal amendment was required.

The facts are undisputed. We decide this issue of first impression as a matter of law; our review is de novo. See *Bomhoff v. Nelnet Loan Services, Inc.,* 279 Kan. 415, 419-20, 109 P.3d 1241 (2005) (summary judgment on undisputed facts); *Schmidtlien Electric, Inc. v. Greathouse,* 278 Kan. 810, 819, 104 P.3d 378 (2005) (statutory interpretation); *Brown v. State,* 261 Kan. 6, 8, 927 P.2d 938 (1996) (interpretation and application of statute of limitations).

We begin our analysis by rejecting Vorhees' argument that the mere filing of his February 11, 2004, petition for appointment of an administrator cured any deficiency in his original negligence petition. Mere filing which seeks appointment does not equate to actual appointment, as demonstrated by his own pleadings. Among other things, his February 11 petition requested that Gerber serve, but the ultimate appointment was of Horak 90 days later.

Moreover, Kansas statutes do not support Vorhees' argument. K.S.A. 59-2239(2) provides:

"Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim. For the purpose of enforcing such claims, . . . a special administrator [may be] appointed, and suit filed against the administrator within the period of the statute of limitations for such action. . . . The action may be filed in any court of competent jurisdiction and the rules of pleading and procedure in the action shall be the same as apply in civil actions. Any such special administration shall be closed

and the special administrator promptly discharged . . . upon conclusion of any action filed."

K.S.A. 59-710, which establishes an expedited procedure for administrator appointment, also fails to suggest mere filing suffices:

"For good cause shown a *special administrator may be appointed pending* the appointment of an executor or administrator, after the appointment of an executor or administrator without removing the executor or administrator or *pursuant to subsection (2) of K.S.A. 59-2239 as amended by this act.* The appointment may be for a specified time, to perform duties respecting specific property, or to perform particular acts." (Emphasis added.)

The expedited procedure contained in K.S.A. 59-2204 also fails to support Vorhees' argument:

"A probate proceeding may be commenced in the district court by filing a petition and causing it to be set for hearing. When a petition is filed, the court shall fix the time and place for the hearing on it. *When a petition is filed for the appointment of a personal representative, the court may appoint the proposed personal representative or some other suitable person, with or without bond, to conserve the estate until a hearing is had and a personal representative is appointed.*" (Emphasis added.)

We conclude that none of these statutes indicates that mere filing equates to actual appointment of the estate administrator. We consequently hold that the February 11 petition for appointment did not cure any administrator capacity deficiency in the January 26 negligence petition.

We next turn to the argument that because there was no defendant capable of being sued before the statute of limitations ran, there was nothing to which the later appointed, and served, Administrator could relate back. Accordingly, the statute of limitations bars the action. K.S.A. 60-203(a) provides:

"A civil action is commenced at the time of: (1) Filing a petition with the clerk of the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of process or first publication, if service of process or first publication is not made within the time specified by provision (1)."

As noted, Vorhees' petition was timely filed. It named as defendants Francisco J. Baltazar, who was deceased, and the "Admin-

istrator of the Estate of Francisco J. Baltazar," who had not yet been appointed. Horak's actual appointment was not made until 89 days after the statute of limitations had run. Accordingly, at the time of filing, the Administrator—although named as a defendant—had no capacity to be sued. See *Ryan*, 29 Kan. at 498-500.

An analogous situation occurred in *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005). There, Margarita Torres Wilson died on August 18, 1998. On January 7, 2000, her daughter, Pauline Wilson Lovato, filed a survival action to recover for Wilson's personal injuries. Lovato alleged that she was the "Personal Representative" of Wilson's estate, but acknowledged that "no administrator [of the estate] ha[d] been appointed." 171 S.W.3d at 847. Two months after filing suit, in March 2000, Lovato filed an application in the probate court asking to be appointed administrator of her mother's estate. The statute of limitations ran on November 1, 2000 (after some tolling), and on April 22, 2002, the defendant Austin Nursing Center moved for summary judgment arguing, among other things, that the survival claim was barred by the statute of limitations.

Lovato was finally appointed administrator 3 weeks later on May 9, 2002. She then filed an amended petition on May 20, 2002, alleging that she was now the "Independent Administratrix" of the Estate of Margarita Torres Wilson. 171 S.W.3d at 847. The trial court granted the nursing center's summary judgment motion, and the Court of Appeals reversed.

The Texas Supreme Court first observed that most cases involve an amended pleading alleging a plaintiff's representative capacity for the first time.

"Generally, cases involving post-limitations representative capacity involve an amended pleading alleging that capacity for the *first time*. [Citations omitted.] In such cases, the issue is usually whether the plaintiff's post-limitations amendment, altering the plaintiff's capacity, can relate back to the plaintiff's pre-limitations pleadings." 171 S.W.3d at 852.

It then observed that *Lovato* presented a different situation, *i.e.*, the plaintiff's representative capacity had been asserted in the original petition:

"This case is somewhat unusual, however, because Lovato has alleged representative status on behalf of the estate in every petition filed with the trial court. Her original petition asserted that she was the 'Personal Representative of the Estate of Margarita Torres Wilson.' This allegation . . . asserted that Lovato was bringing suit in her capacity as the estate's representative." 171 S.W.3d at 852.

The *Lovato* court therefore framed the more precise issue before it as follows:

"Thus, the issue here is not whether her amended pleadings relate back to her original petition—as every petition alleges her representative status—but whether her post-limitations capacity *cures* her pre-limitations lack thereof. We conclude that it does." (Emphasis added.) 171 S.W.3d at 852.

In support, the court observed that it had previously allowed a plaintiff to change her capacity. In *Davis v. Preston,* 118 Tex. 303, 16 S.W.2d 117 (1929), a widow filed suit in her individual capacity and later amended her pleadings to assert her administratrix capacity, with the court holding " '[t]hat this defect did not prevent her suit from being "properly commenced" ' prior to expiration of the statute of limitations." *Lovato*, 171 S.W.3d at 852.

The court next observed that similar allowance had been granted when the defendant's capacity had been changed:

"[W]hen faced with a change in a *defendant's* capacity—an amended petition filed against an estate's representative, when the original petition named only the estate itself—we held that limitations did not bar the claim, because 'the purpose and the nature of the claim asserted were clear from the outset.' *Price v. Estate of Anderson,* 522 S.W.2d 690, 692 (Tex. 1975); *see also Rooke v. Jenson,* 838 S.W.2d 229, 230 (Tex. 1992)." 171 S.W.3d at 853.

The court then reasoned that because it had held that a plaintiff's *amended pleading* alleging representative capacity satisfied the relation-back requirements, then, a *fortiori,* an *original petition* that alleges the correct capacity should suffice for limitations purposes. 171 S.W.3d at 853. The court only required that capacity, if challenged, be established within a reasonable time. The Texas statute referenced by the court, Tex. R. Civ. Proc. 93(1)-(2) (West 2006), allows a defendant's challenge to the defendant's capacity to be sued or the plaintiff's capacity to sue. Texas case law apparently provides the opposing party a reasonable time to cure any defect in capacity. Accord *Lorentz v. Dunn,* 171 S.W.3d 854 (Tex. 2005).

*Lovato's* guidance is particularly useful because the Texas case law it discussed is similar to Kansas case law. For example, we have allowed an estate administrator with no capacity to sue to be exchanged for one with capacity although her appointment did not occur until after the statute of limitations had run. In *Williams v. Bridge & Iron Co.,* 111 Kan. 34, 206 Pac. 327 (1922), a wrongful death petition was timely brought in the name of William Minney, "the duly appointed, qualified, and acting administrator of the estate of Archibald Minney, deceased." 111 Kan. at 34. Five months after the statute of limitations ran, the defendant filed a demurrer, alleging *inter alia,* that the plaintiff—as a Kansas administrator— had no legal capacity to sue. The next month Mary Williams was appointed as public administrator of Archibald Minney's estate by a Missouri probate court. The following month the trial court granted a joint motion of William Minney and Mary Williams, as estate administrators, to exchange Williams for Minney as the plaintiff. Williams, as Missouri administrator, then filed an amended petition which, like the original petition, was limited to the claim for Archibald's wrongful death.

This court acknowledged: "Of course the Kansas administrator had no legal capacity to sue and consequently could not maintain the action . . . , and just as certainly a Missouri administrator could maintain such action under Missouri statutes inserted in the pleadings, and under our own code . . . ." 111 Kan. at 35. In affirming the post-limitations administrator appointment and exchange, we characterized a precedential holding from *Harlan v. Loomis,* 92 Kan. 398, 140 Pac. 845 (1914), as follows:

"[T]he substitution of one party for another as plaintiff did not change the cause of action, and *that such amendment related back to the institution of the action* and that the statute of limitations stopped running as to the substituted plaintiff when the action was begun rather than when the substitution was made." (Emphasis added.) 111 Kan. at 36.

The *Williams* court held that its view was in accord with *Mo., Kans. & Tex. Ry. v. Wulf,* 226 U.S. 570, 57 L. Ed. 355, 33 S. Ct. 135 (1913). There, a mother brought a suit for her son's wrongful death in her capacity as next of kin and sole beneficiary. The defendant railroad alleged that the federal law under which she pro-

ceeded required suit to be brought by a representative. After the statute of limitations had run, the trial court allowed the mother to amend her complaint, which stated she had now been appointed temporary administratrix of her son's estate; she brought suit in both her individual and representative capacities. The Court upheld the amendment and its relation back, stating that the only difference between the petitions had been the difference in capacities in which suit had been brought. *Cf. Montgomery Ward & Co. v. Callahan,* 127 F.2d 32, 36 (10th Cir. 1942) (under Kansas law, where guardian ad litem may not maintain the action, legal guardian appointed after statute of limitations has run may be substituted as plaintiff); *Sundgren v. Topeka Transportation Co.,* 178 Kan. 83, 283 P.2d 444 (1955) (amendment of personal injury petition to change plaintiff in his individual capacity to now state action was brought by employer in name of its employee for benefit of employer, employee, and insurance company as their interests may appear; relation back allowed of amended petition filed more than 2 years after cause of action accrued).

More recently, in *Shinkle v. Union City Body Co.,* 94 F.R.D. 631, 637 (D. Kan. 1982), the United States District Court for the District of Kansas addressed a Kansas survival action timely brought by the "heirs at law of the decedent Victor Shinkle." After the statute of limitations had run, one of Victor's heirs was appointed as administrator of his estate. The defendants argued that dismissal was required under the statute of limitations because the heirs were not proper parties to bring the action, only the decedent's personal representative. The court allowed the plaintiff to be changed from the heirs of Victor Shinkle to "Mary Catherine Shinkle as administrator of estate" and ruled that this amendment related back to the filing of the original complaint even though made more than 2 years after the cause of action arose. 94 F.R.D. at 637. The court further held that "[t]his result also agrees with the Tenth Circuit's interpretation of Kansas Supreme Court cases," *i.e., Williams* and *Harlan.* 94 F.R.D. at 638.

In addition to reviewing Texas cases involving a change in plaintiff's capacity, the *Lovato* court also reviewed its cases involving a change in a *defendant's* capacity, *i.e.,* when the original petition

named only the estate itself, an amended petition was filed against an estate's representative, and the court held that limitations did not bar the claim. The Kansas Court of Appeals addressed this scenario in *Anderson v. Estate of Peterson,* No. 90,863, unpublished opinion filed September 24, 2004, which was relied upon by the Court of Appeals in the instant case.

There, Anderson and Peterson were involved in a car accident. Anderson learned of Peterson's later death from unrelated causes and approximately 8 days prior to the expiration of the statute of limitations, he filed suit against the "Estate of Gordon Peterson, deceased." *Anderson,* slip, op. at 2. His petition stated that he did not know whether an administrator had been appointed but that he intended to serve the administrator once appointed. Indeed, at the time the petition was filed, "there was no existing court proceeding nor any personal representative empowered to act on behalf of the estate." Slip op. at 3.

After the statute of limitations had run, but prior to the expiration of time allowed for service of process under K.S.A. 60-203(a)(1), a special administrator was requested by Anderson, appointed by the court, and served with process. Defense counsel then filed a motion to dismiss for lack of subject matter jurisdiction. Over a month later, Anderson filed a motion to amend the petition to change defendant's generic estate name to "Daniel J. Sevart, Special Administrator of the Estate of Gordon L. Peterson, deceased." Slip op. at 3. The district court denied Anderson's motion and granted defense counsel's motion to dismiss without prejudice because of lack of subject matter jurisdiction, citing, *inter alia, Moore v. Luther,* 29 Kan. App. 2d 1004. *Anderson,* slip op. at 4.

The Court of Appeals reversed the district court. It acknowledged that when commenced, Anderson's action lacked a legal entity as a defendant because an estate of a deceased person is not a legal entity.

"Nevertheless, that fact, alone, did not mandate a dismissal without prejudice, as the district court ruled below. Anderson had the right, under K.S.A. 2003 Supp. 60-215(a), to amend his petition to name a defendant with legal status. Thus, the district court's dismissal, based on a finding that it lacked jurisdiction because of the initial petition, was erroneous." *Anderson,* slip op. at 3.

The *Anderson* defendant argued that even if an amendment were granted, it could not relate back to the original filing date to save the case from the statute of limitations. The Court of Appeals rejected this argument. Instead of dismissing the suit because of a problem regarding the name of the specific defendant, the court observed the "directive to liberally construe the Kansas Code of Civil Procedure to secure justice and . . . the principle that the law prefers for a case to be decided on the merits rather than to be dismissed on a questionable procedural ruling. [Citation omitted.]" Slip op. at 5. Because the district court had not ruled on the merits of plaintiff's motion to amend, the court remanded for that determination.

Turning now to the instant case, the Court of Appeals held that under K.S.A. 60-203(a), Vorhees commenced the action within the statute of limitations period. This holding is consistent with another panel's decision and with the holdings in a number of other jurisdictions under analogous circumstances. See *Hinds v. Estate of Huston,* 31 Kan. App. 2d 478, 66 P.3d 925 (2003) (after suing decedent, plaintiff allowed to amend under K.S.A. 60-215 to add special administrator as defendant after running of statute of limitations); *Hamilton v. Blackman,* 915 P.2d 1210, 1218 (Alaska 1996) (collecting many cases and stating: "We thus agree with the federal courts and those state courts holding similarly that amendments adding the representatives of the estates of deceased persons as defendants may relate back to the date of the original pleadings, even if the original pleading erroneously named only the decedent as the defendant."); see 6A Wright, Miller & Kane, Federal Practice and Procedure: Civ. 2d § 1498 (1990).

The Administrator, however, argues that the panel failed to acknowledge or distinguish the contrary authority of *Groenhagen v. Heetco, Inc.,* No. 89,776, unpublished opinion filed August 22, 2003. He specifically asserts that *Groenhagen* is instructive because there "the court [of appeals] found that an administrator is not a proper party to a case prior to her appointment and has no capacity to sue." While a yet-to-be-appointed administrator admittedly has no capacity to sue, the Supreme Court in *Williams v. Bridge & Iron Co.,* 111 Kan. 34, has ruled that an administrator without

capacity can be exchanged for one with capacity who is appointed after the statute of limitations has run. Here, there has been even less than an exchange of one particular administrator for another; rather, a mere coloring in of the space within the outline of the previously-named defendant administrator. Moreover, *Groenhagen* is distinguishable because it involved a lawsuit dismissal and an attempt to utilize the savings statute, K.S.A. 60-518.

Accordingly, under the rationale of the Kansas-based cases previously cited, and particularly the rationale of *Lovato* in dealing with a mere "coloring in the originally-named party," we hold that Vorhees' suit was timely filed against the Administrator. See K.S.A. 60-203(a) (civil action is commenced at the time a petition is filed if service of process is obtained within 90 days, or 120 days if an extension is granted, after the petition is filed).

This holding leaves us with the Administrator's next argument to be addressed, *i.e.*, whether a formal motion to amend under K.S.A. 60-215 was required to "color in between the lines." As support the Administrator offers *Kiefer v. Reynolds,* No. 89,876, unpublished opinion filed May 7, 2004, and *Back-Wenzel v. Williams,* 279 Kan. 346, 109 P.3d 1194 (2005).

In *Kiefer*, the plaintiff sued a decedent. After expiration of the statute of limitations, the plaintiff learned of the defendant's death. He obtained an order extending the time for service of process and an order appointing a special administrator for the estate. Thereafter, the administrator accepted service. The Court of Appeals held that the district court correctly dismissed the case because without a substitution or an amendment adding the administrator as a party with the capacity to be sued, the plaintiff was still attempting to sue a dead person. It stated that the plaintiff "could have (and should have), as a matter of course, filed an amended petition naming the special administrator as defendant. This would have allowed the amended petition to relate back to the timely filed original petition." Slip op. at 2.

*Keifer* is distinguishable, however, because its plaintiff did not originally list the estate administrator as a defendant, as here.

*Back-Wenzel* is also distinguishable. There, plaintiff sued a decedent. After the statute of limitations expired, plaintiff learned of

the death; a special administrator was appointed and served. Thereafter, plaintiff attempted to substitute the special administrator for the decedent under K.S.A. 60-225. After the district court dismissed the suit, this court determined that the plaintiff could not substitute a party under K.S.A. 60-225 because this particular statute is not applicable when a party dies before commencement of an action. We did not reach the issue of whether an amendment under K.S.A. 60-215 was required. 279 Kan. at 353 ("Our affirmation of the district court on the basis of 60-225 renders moot any discussion about the 60-215 cases cited by the Court of Appeals.").

In the instant case, the Court of Appeals looked to *Anderson v. Estate of Peterson*. There, as previously noted, the plaintiff filed a motion to amend under 60-215 to change the original defendant's name from the Gordon Peterson Estate to "Daniel J. Sevart, Special Administrator of the Estate of Gordon L. Peterson, deceased" after appointment of the administrator. Slip op. at 3. However, the *Anderson* court did not address whether the motion was required. Implicit in the present Court of Appeals' holding is a conclusion that a motion to amend was not required. *Anderson* is dissimilar because here no change in the defendant's name is required; since the original filing, the listed defendant has been "Administrator of the Francisco J. Baltazar Estate."

Because these exact circumstances apparently have not arisen in Kansas, we return to the *Lovato* decision for consideration of the Texas Supreme Court's approach based upon Texas case law that is similar to Kansas'. *Lovato* held that no formal amendment was required to cure the defect in the originally named plaintiff's capacity:

"If, as we have held, a plaintiff's amended pleading alleging representative capacity satisfies the relation-back requirements, an original petition that alleges the correct capacity should suffice for limitations purposes, provided that capacity, if challenged, is established within a reasonable time. . . .

"In any event, it would be pointless to require that the plaintiff file an 'amended' pleading containing the same allegations of capacity as were stated in her original petition. The estate commenced the suit before limitations expired; Lovato cured the defect in her capacity before the case was dismissed." 171 S.W.3d at 853.

The court concluded: "Because Lovato's original petition asserting her representative capacity was filed before the statute of limitations expired, the survival claim is not time-barred." 171 S.W.3d at 853.

We agree with the *Lovato* court. The capacity of the defendant Administrator was essentially alleged in Vorhees' original negligence petition, which was timely filed. Horak's later appointment merely colored in the space within the outline of the originally-named, capacity-less defendant administrator.

It would be pointless to require an amended petition, particularly under the circumstances of this case which are even more favorable to the plaintiff than *Lovato*. In *Lovato*, while plaintiff sought appointment of an administrator within the statute of limitations, the defendant moved for summary judgment 17 months after the statute of limitations had run, and the plaintiff was not appointed administrator until approximately 3 weeks later. Here, like *Lovato*, plaintiff Vorhees timely filed his petition seeking appointment of the administrator, albeit the day before the statute of limitations ran. But, the administrator was appointed—and thereby given capacity to be sued—only 89 days after the statute of limitations ran; the Administrator was served 13 days later (thus meeting the K.S.A. 60-203[a] time requirement for commencing an action); and the dispositive motion was not filed until 31 days after that.

Although not significant to our analysis, we observe that the Baltazar estate is not in any way disadvantaged by this conclusion. The administrator was selected and appointed through Vorhees' actions; an even later notice would have been given to an administrator who had been selected and actually appointed through Vorhees' actions the day before the statute ran, but who was nevertheless timely served 120 days later.

Instead of requiring an amended pleading to relate back to the original petition, we hold that the Administrator's post-limitations capacity cures the pre-limitations lack thereof. There is no need to formally change the name of the original defendant "Administrator of the Estate of Francisco J. Baltazar," to "*Steven Horak*, Administrator of the Estate of Francisco J. Baltazar." *Cf.* K.S.A. 60-102

(provisions of Code of Civil Procedure shall be liberally construed and administered to secure the just, speedy, and inexpensive determination of every action or proceeding); K.S.A. 60-209(a) (it is not necessary to aver the capacity of a party to be sued or the authority of a party to be sued in a representative capacity); K.S.A. 59-2201 (no defect in form of pleadings in probate proceeding shall impair substantial rights). Consequently, there is no resultant need to amend. Nor is there any need to attempt substitution as in *Williams,* because the party remains the same.

The dissent primarily argues that an amendment is mandatory in order to adequately inform the public of the actual parties to the litigation. Under our facts, the public's informational needs are already well-met; so too are the informational needs of the parties and their counsel.

Steven Horak was appointed as administrator by a district court. The record on appeal reveals that the administrator's Petition for Issuance of Letters of Administration, the court's order appointing him, and his accompanying court-issued letters of administration were all filed of public record with the clerk of the district court. After Horak's court appointment, he voluntarily came to the office of Vorhees' counsel and voluntarily accepted a copy of the summons, the Vorhees petition, and other probate papers. Horak then voluntarily executed the "Return on Service of Summons," which stated that as a "within named defendant" he "acknowledge[d] receipt of service of summons and petition in the above entitled case." This Return—which bore Horak's notarized signature on the line above the identifying phrase "Steven Horak, Administrator of Baltazar Estate"—was timely filed of public record with the clerk of the district court in the Vorhees case file. Three weeks later Horak, who expressly identified himself as "the Defendant, Steven Horak, Administrator of the Estate of Francisco J. Baltazar," filed his motion to dismiss the Vorhees suit as a matter of public record with the clerk of the district court.

Simply put, the only defendant of consequence has been the estate of Francisco J. Baltazar, which is sued through its administrator as representative simply because Baltazar himself is dead. See *Egnatic v. Wollard,* 156 Kan. 843, 856, 137 P.2d 188 (1943)

(when a person dies, his or her individual capacity to respond in damages for his or her torts ceases; thereafter his financial obligations must be met by his or her estate); *Ryan,* 29 Kan. at 498-499 (absent an administrator or an executor, an estate lacks the capacity to be sued). Accordingly, the public's interest, if any, in learning the particular name of the Francisco J. Baltazar estate representative pales in comparison to the public's interest in learning that this particular estate is at some risk. Nevertheless, the dissent's stated need—that there be a clear record of who are the parties to a lawsuit because "[i]t is important for purposes of res judicata, judgment enforcement, and public records"—is presently and adequately being met.

Issue 3: *Service of process upon the Administrator was effective.*

Finally, the Administrator argues that service of process was ineffective and void because the law clerk who served Horak was not a qualified process server under K.S.A. 60-303(d)(3). To the extent resolution of this issue requires statutory interpretation, this court exercises unlimited review. See *Schmidtlien Electric, Inc.,* 278 Kan. at 819.

Although the district court did not specifically rule on this section of the Administrator's motion to dismiss, it did grant the overall motion. The Court of Appeals concluded that because the Administrator acknowledged service on the summons, service was properly effected pursuant to K.S.A. 60-303(e). *Vorhees v. Baltazar,* slip op. at 10-11. K.S.A. 60-303(e) states: "An acknowledgment of service on the summons is *equivalent* to service." (Emphasis added.)

The Administrator now argues that the Court of Appeals erred in relying on the acknowledgment of service. In support, he cites *Hall v. Quivira Square Development Co.,* 9 Kan. App. 2d 243, 675 P.2d 931, *rev. denied* 235 Kan. 1041 (1984), for the proposition that there can be no acknowledgment of service that was void *ab initio.*

*Hall,* however, does not support the Administrator's broad assertion. There, the Court of Appeals addressed the procedure to obtain service out of state found in a previous version of K.S.A. 60-

308. The panel held that when out-of-state service is made by a process server not authorized to serve process out of state, the service is not effective. 9 Kan. App. 2d at 247. *Hall*, however, did not discuss acknowledgment of process under K.S.A. 60-303(e).

The facts in the present case are easily distinguishable from *Hall*. Here, service did not occur out of state. Additionally, the Administrator voluntarily went to Vorhees' attorney's office, where he was served with copies of the summons, petition, and other probate papers by a law clerk for Vorhees' attorney. In the clerk's presence, the Administrator executed the "Return on Service of Summons," which acknowledged receipt of the summons and petition.

The Administrator also fails to discuss K.S.A. 60-303(e), which states:

"An acknowledgment of service on the summons is equivalent to service. The voluntary appearance by a defendant is equivalent to service as of the date of appearance."

The plain language of the statute supports the panel's opinion that process was effective. Pursuant to the statute, even when service is not properly effectuated, an acknowledgment serves as the *equivalent* of service.

The judgment of the Court of Appeals reversing the district court is affirmed. The judgment of the district court is reversed, and the case is remanded for further action consistent with this opinion.

LUCKERT, J., not participating.

LOCKETT, J., Retired, assigned.

McFARLAND, C.J., dissenting: I dissent from that part of the majority's decision holding that this lawsuit can proceed against a defendant identified only generically as "the Administrator of the Estate of Francisco J. Baltazar," without the necessity of a formal

amendment under K.S.A. 60-215(c) to specifically identify by name
the individual who serves as the representative for the estate.

The majority holds:

> "Instead of requiring an amended pleading to relate back to the original peti-
> tion, we hold that the Administrator's post-limitations capacity cures the pre-
> limitations lack thereof. There is no need to formally change the name of the
> original defendant, 'Administrator of the Estate of Francisco J. Baltazar,' to 'Steven
> Horak, Administrator of the Estate of Francisco J. Baltazar.' *Cf.* K.S.A. 60-102
> (provisions of Code of Civil Procedure shall be liberally construed and adminis-
> tered to secure the just, speedy, and inexpensive determination of every action or
> proceeding); K.S.A. 60-209(a) (It is not necessary to aver the capacity of a party
> to be sued or the authority of a party to be sued in a representative capacity);
> K.S.A. 59-2201 (no defect in form of pleadings in probate proceeding shall impair
> substantial rights). Consequently, there is no resultant need to amend. Nor is there
> any need to attempt substitution as in *Williams* because the party remains the
> same."

This analysis fails to recognize that the capacity problem in this
case is two-fold. The fact that the petition named the "the admin-
istrator" of the estate as a defendant when, in fact, there was no
person or entity existing in that capacity is only the first of the two-
part problem. Vorhees addressed that problem by getting an ad-
ministrator appointed. The second part of the problem is the fact
that the petition fails to identify a legally existent party with the
capacity to be sued.

Individuals and corporations are the only legal entities capable
of suing and being sued, absent a statute providing such capacity.
*Kansas Private Club Ass'n v. Londerholm*, 196 Kan. 1, 3, 408 P.2d
891 (1965) (in every cause of action there must be a plaintiff which
is either a natural or an artificial person having a legal entity, and
individuals and corporations are our only strictly legal entities in
the absence of qualifying statutes). As the majority acknowledges,
in order for a decedent's estate to be liable for the decedent's
alleged negligence, it is necessary to bring an action against the
executor or administrator of the estate. However, a personal rep-
resentative of an estate has to be an individual, or a bank, a savings
and loan, or other corporation. See K.S.A. 59-1701 (concerning
appointment of banks, savings and loans associations, or other cor-
porations to act as fiduciary); K.S.A. 59-705 (listing persons to

whom administration may be granted). Moreover, a petition must identify the parties by name. K.S.A. 60-210(a) (petition shall include the names of all of the parties). Accordingly, a defendant only generically identified as the "Administrator of the Estate of Francisco J. Baltazar" is not a legal entity capable of being sued, regardless of the fact that such an individual exists and has been served.

The only way this defect can be corrected is by an amendment to the petition specifically identifying by name the individual or entity person which serves in the representative capacity for the estate. In the event an amendment is necessary to change the name of a party after the statute of limitations has expired, as it has in this case, the amended petition would only relate back to the date of the original petition if the requirements of K.S.A. 60-215(c)(2) are met: (1) the claim arose out of the same conduct, transaction, or occurrence set forth in the original pleading; and (2) within the statute of limitations, including the period for service of process, the party to be brought in by amendment (a) received notice of the action, and (b) knew or should have known that but for a mistake concerning the identity of the proper party the action would have been brought against the party.

If Vorhees had amended his petition to name the appointed administrator, Steven Horak, after he was appointed, the amendment might have related back under K.S.A. 60-215(c). But Vorhees never sought to amend the petition. The majority concludes, however, that a formal amendment naming Steven Horak as the administrator would be "pointless" and, thus, is not necessary. In support, the majority relies on a single case arising out of Texas, *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005).

*Lovato* is distinguishable from the situation before us. In *Lovato*, the plaintiff filed a survival action on behalf of her deceased mother. In the petition, Lovato alleged that she was the "Personal Representative of the Estate of Margarita Torres Wilson." 171 S.W.3d at 852. She had not been so appointed however, and in fact, no administrator had been appointed. 171 S.W.3d at 847. She was eventually appointed as the administrator of her mother's estate, but not until after the statute of limitations had expired. The

defendant moved for summary judgment, arguing, among other things, that the claim was barred by the statute of limitations because it was not filed by a party with capacity before the expiration of the limitations period. 171 S.W.3d at 847. Lovato then filed an amended petition in which she alleged she was the "Independent Administratrix" of her mother's estate. 171 S.W.3d at 847. Lovato then responded to the summary judgment motion, arguing that the amended petition related back to the original filing date, making the suit timely. 171 S.W.3d at 847. The trial court granted summary judgment.

The Texas Court of Appeals reversed, holding that Lovato had cured her defective capacity by being appointed as administrator and that the amended petition related back to the original filing date. 171 S.W.3d at 847. The Texas Supreme Court affirmed, but on different grounds. The court concluded that because Lovato's original petition alleged that she was the personal representative of the estate, her appointment as representative cured the pre-limitations defect in her capacity, without the necessity of an amended petition:

> "Generally, cases involving post-limitations representative capacity involve an amended pleading alleging that capacity for the *first time*. [Citations omitted.] In such cases, the issue is usually whether the plaintiff's post-limitations amendment, altering the plaintiff's capacity, can relate back to the plaintiff's pre-limitations pleadings. This case is somewhat unusual, however, because Lovato has alleged representative status on behalf of the estate in every petition filed with the trial court. Her original petition asserted that she was the 'Personal Representative of the Estate of Margarita Torres Wilson.' This allegation, though apparently untrue, asserted that Lovato was bringing suit in her capacity as the estate's representative. Thus, the issue here is not whether her amended pleadings relate back to her original petition—as every petition alleges her representative status—but whether her post-limitations capacity cures her pre-limitations lack thereof. We conclude that it does.
>
> . . . .
>
> "If, as we have held, a plaintiff's amended pleading alleging representative capacity satisfies the relation-back requirements, an original petition that alleges the correct capacity should suffice for limitations purposes, provided that capacity, if challenged, is established within a reasonable time. . . .
>
> "In any event, it would be pointless to require that the plaintiff file an 'amended' pleading containing the same allegations of capacity that were stated in the original petition. The estate commenced the suit before limitations expired; Lovato cured

the defect in her capacity before the case was dismissed. Under those circumstances, the estate had standing and was ultimately represented by a person with capacity to pursue the claim on its behalf." 171 S.W.3d at 852-53.

*Lovato* does not support the conclusion that no amendment is necessary in our case. Critical to the court's decision in *Lovato* was the fact that the original petition specifically named Lovato as the entity bringing the suit as the personal representative of the estate. Although the allegation of her representative status was not true and, thus, she had no capacity at the time of filing, that defect was cured when she was subsequently appointed as the administrator. The court further held that because the petition had identified Lovato as the personal representative, a formal amendment to the petition was not necessary. Under those circumstances, the court recognized that no useful purpose would be served by requiring an amended petition that would simply restate the allegation already contained in the original petition.

In *Lovato*, then, there was only one problem with capacity—the entity named as the personal representative did not actually have that capacity at the time of filing. In the instant case, on the other hand, as discussed above, the petition suffered from a two-fold capacity problem. The appointment of Steven Horak cured the problem that no legal entity with the capacity to be sued existed. The second part of the problem, which did not exist in *Lovato*, remained unresolved—the petition failed to identify a specifically named individual as the defendant. In *Lovato*, anyone looking at the petition could determine who the parties were. That is not true in the case before us. Under these circumstances, requiring an amendment to formally identify and name Steven Horak as the administrator of the estate is not "pointless," but, rather, is mandatory.

The rule requiring that lawsuits specifically identify the parties involved by name "is not merely one of administrative convenience. It also serves society's interest in having access to the facts of the lawsuit, among which are the actual names of the precise parties involved." *A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 500, 660 A.2d 1199 (1995). It is important for purposes of res judicata, judgment enforcement, and public records that there be a clear record of

who are the parties to a lawsuit. We recently discussed the public's interest in knowing the identity of litigants in the context of pseudonymous litigation in *Unwitting Victim v. C.S.*, 273 Kan. 937, Syl. ¶ 7, 47 P.3d 392 (2002):

> "This court recognizes the strong public interest militating against pseudonymity in pleadings—the public right of access to civil judicial records and proceedings. The public right of access to civil judicial proceedings has as its bases constitutional law, the common law, and public policy. The public's right to know the true identity of the parties is concomitant with the right of public access to judicial proceedings and records."

Compliance with this important requirement cannot be excused under K.S.A. 60-102, requiring liberal construction of the provisions of the civil procedure code "to secure the just, speedy and inexpensive determination of every action or proceeding." As the Third Circuit Court of Appeals expressed when considering whether the federal counterpart to K.S.A. 60-102 applied to excuse the premature filing of an appeal:

> "We are not oblivious of the trend away from those niceties which so often in the past harassed both litigants and the courts. But we are not here insisting upon mere satisfaction of barren formal technicalities. Howsoever liberal we may wish to be, it cannot be gainsaid that certain formalities are indispensable to 'just, speedy, and inexpensive' litigation, and these attributes of our federal judicial system are forthcoming only upon adherence to, rather than upon rejection of, the Rules." *Healy v. Pennsylvania R. Co.*, 181 F.2d 934, 936 -937 (3d Cir. 1950).

Additionally, K.S.A. 60-209(a), which eliminates the necessity of pleading capacity, does not eliminate the necessity of properly identifying a specifically named individual serving in a representative capacity as a party defendant:

> "This rule does not abolish the necessity of identifying in the pleading the corporate character of the party, the fact of partnership, the identity of the nature of the fiduciary or vicarious relationship, as the case may be, but it does abolish the necessity of pleading the facts from which capacity to bring the particular action arises, or the fact of capacity itself. In other words the fact of capacity is initially assumed in all areas, the same as it has always been assumed that an individual plaintiff has mental capacity or has reached the age of majority." 4 Gard and Casad, Kansas Code of Civil Procedure Annotated § 60-209, p. 48 (4th ed. 2003).

For compliance with the statute, Vorhees would only have been required to amend his petition to identify the administrator by name. This is a simple task which, initially, would not have required leave of court. Vorhees did not follow the required statutory procedure. As previously stated, there are good reasons for the statutory requirements, yet the majority opinion approves the failure to follow these requirements for no legally sufficient reason. In order to identify the defendant herein, the majority would require the public to scour the substance of the documents filed in the case or cross-search court records for the generically identified estate simply to determine the identity of the defendant. This task would be all the more difficult in this case because, initially, there was no estate case and, subsequently, the estate proceedings were not even in the same county as the tort case. .

I would reverse the Court of Appeals and affirm the district court.

ALLEGRUCCI, J., joins the foregoing dissenting opinion.